The Seneca County Bank *v.* Lamb.

---

THE SENECA COUNTY BANK *vs.* LAMB and others.

| 26b | 595 |
|---|---|
| 65 AD | 590 |

A bank subject to the provisions of the safety fund act of April 2, 1829, is expressly restrained, by the 33d section of that act, from taking more than six per cent in advance on discounting paper maturing in sixty-three days; and paper discounted by a bank in violation of this section, is void in its hands.

By force of the terms used the statute prohibits, also, the making of the *contract* by or upon which a greater rate of interest than that specified is taken.    Hence, although the contract is executed, so far as relates to the act of discounting, the bank will not be allowed to reap the fruits of the transaction thus prohibited, by a recovery upon the paper discounted.

Where a contract sought to be enforced springs out of a violation of the statutes of the state, the court will leave the parties to such contract where it finds them ; withholding from both its aid in enforcing it.

The legislature cannot confer upon a moneyed corporation power to enact by-laws contravening, repealing, or in anywise changing, the statutory or common law of the land.    Hence, a provision, in a bank charter, conferring upon the directors power to make and prescribe such by-laws, rules and regulations as shall be needful, touching " the *time, manner* and *terms* upon which discounts and deposits shall be made," will be construed as giving to the directors power to make by-laws, &c. to operate upon and control the internal conduct of the business of the bank, merely, and to restrain and direct its own officers and servants in the management of its affairs, and not to affect the public at large, or the rights and interests of third persons.

MOTION for a new trial, on a case containing exceptions. The issue was tried at the Erie circuit in October, 1857, before Mr. Justice SMITH, without a jury. The action was brought on a promissory note for $1000, made by the defendant Lamb, and indorsed by the defendants Dole and Hill, payable at the Albany City Bank, forty days after date, and dated February 5, 1857. It was admitted, on the trial, that the note was discounted by the plaintiffs, at their banking house in Waterloo, and that on such discounting the plaintiffs took and received at the rate of *seven per cent per annum in advance;* and that the note had no inception before it was so discounted. The charter of the plaintiffs was produced and read in evidence, from which it appeared that they are a moneyed corporation, and were, by their charter, expressly subjected to the provisions of the safety fund act of 1829.

The learned justice ruled, at circuit, that the note having less than sixty-three days to run, and having been discounted, and *the discount taken in advance* by the plaintiffs, at *more than six per cent,* was void in their hands, and directed judgment for the defendants. The plaintiffs appealed from the judgment entered on such decision.

*F. E. Cornwell,* for the appellants.

*John Ganson,* for the respondents.

*By the Court,* DAVIS, P. J. The plaintiffs are a moneyed corporation, created by special charter in 1833. (*Sess. Laws of* 1833, *ch.* 58, *p.* 53.) The 36th section of their act of incorporation is as follows : " The said corporation shall also be subject to the provisions contained in the act entitled ' An act to create a fund for the benefit of the creditors of certain moneyed corporations, and for other purposes,' passed April 2, 1829, so far as the same shall be in force at the time of passing this act." The 33d section of the act referred to provides, that "Every moneyed corporation *subject to this*

*act* shall be entitled to receive the legal interest established, or which may hereafter be established, by the laws of this state, on all loans by them made, or notes or bills by them severally discounted or received in the ordinary course of business, but on all notes or bills discounted or received in the ordinary course of business, *which shall be mature in sixty-three days from the time of such discount, the said moneyed corporation shall not take or receive more than at and after the rate of six per centum per annum in advance."* (*Sess. Laws of* 1829, *ch.* 94, *p.* 173.)

It is insisted, on behalf of the plaintiffs, that the 33d section of " the safety fund act," above quoted, is not applied to them, for the reason that in respect to the plaintiffs it was not " *in force at the time of passing* " their act of incorporation, because inconsistent with sections 3 and 24 of the latter act. Section 3 of the charter confers ordinary banking powers on the corporation, " by discounting bills, notes and other evidences of debt," &c. and although, standing by itself, it would confer the right to take the rate of interest established by general laws, yet it can no more be said to be inconsistent with any special law regulating the rate of interest in particular cases, than with the general statute fixing it at seven per cent, and prohibiting the taking of a greater amount, to which it is concededly subject.

The 24th section of the charter confers on the directors power to make and prescribe such by-laws, rules and regulations as shall be needful, touching, (amongst other things,) " 2. The *time, manner* and *terms* at and upon which discounts and deposits shall be made and received in and by the bank." Whether this section confers any greater power than pertains, at common law, to all similar corporations to make needful by-laws, rules and regulations, it is not important to inquire. It is limited, in the authority it gives, to the making of by-laws, rules and regulations to operate upon and control the internal conduct of the business of the bank; to restrain and direct its own officers and servants in the manage-

ment of its affairs and not the public at large, nor the rights and interests of third persons. (*Mech. and Farmers' Bank* v. *Smith*, 19 *John.* 115.) If allowed to have an operation beyond this, its validity cannot for a moment be sustained. The legislature cannot confer upon a moneyed corporation power to enact *by-laws* contravening, repealing or in anywise changing the statutory or common law of the land. It is enough, however, to dispose of this point to say that no inconsistency is perceived between the provisions of the charter cited by the plaintiffs' counsel, and the 33d section of the act of 1829; and it follows that the plaintiffs are expressly restrained by that section from taking more than six per cent *in advance* on paper maturing in sixty-three days.

It is further insisted on the part of the plaintiff, that the act in question having simply "prohibited the taking of more than six per cent in such cases, *without declaring void the instrument on which it is taken*, the only consequence is that the plaintiffs are liable to be proceeded against on *quo warranto*, for a violation of their charter, and in respect to the particular transaction, are only liable to refund the excess, in a proper action." To sustain this proposition, the cases of *Fleckner* v. *Bank of the United States*, (8 *Wheat.* 338,) and *Bank of the United States* v. *Waggener*, (9 *Peters*, 378,) are relied upon. In the former of these cases, the note on which the action was brought was made by Fleckner, payable to one John Nelder or order, and negotiated after several mesne indorsements to the Planters' Bank of New Orleans, and subsequently discounted by the Bank of the United States for the Planters' Bank. On such discounting the Bank of the United States deducted interest in advance, at the rate of six per cent; and the question presented to, and determined by, the court, was whether this transaction was usurious. The court held it was not, but that "the authority to discount or make discounts did, from the very force of the terms, necessarily include an authority to take interest in advance." After disposing of this point (the only one involved analogous in any degree to

the case at bar) Mr. Justice Story adds, that "if the law were otherwise," that is, if the transaction were usurious, "it would not follow that the transfer to the bank of the present note would be void so that the maker of the note could set it up in his defense. The taking of interest by the bank beyond the sum authorized by the charter would doubtless be a violation of the charter, for which a remedy might be applied by the government; but as the act of congress does not declare that it shall avoid the contract, it is not perceived how the *original defendant* could avail himself of this ground to defeat a recovery." The note of Fleckner was valid in its inception. It had been negotiated to the Planters' Bank, and in their hands, so far at least as the question of usury was concerned, was a valid instrument. The Planters' Bank negotiated it to the Bank of the United States, and the latter discounted it by taking interest in advance at the rate allowed by its charter. If taking that sum in advance had been usury, it is difficult to see how it would have affected the validity of the paper, as against the maker of the note, who was in nowise connected with the transfer to the Bank of the United States. The most that can be claimed for the *obiter* suggestion of the very learned judge is, that since no law had declared a note valid in its inception, held by a *bona fide* holder, and by him subsequently transferred, *void for usury in the transfer*, the maker, who was not connected with the transfer, could not avail himself of the alleged usury to defeat a recovery. But if the learned judge intended to go farther, and to hold that a bank can enforce paper discounted by it in violation of the express provisions of its charter, and having no inception except upon such discount, it is enough to say that the point was not involved in the case before him; and whatever respect may be due to the opinion of so eminent a jurist, the conclusion is not obligatory as authority.

It is more difficult to perceive how the case of the *Bank of the United States* v. *Waggener*, above cited, has any application to the one at bar. In that case the note on which the

suit was brought was not discounted by the Bank of the United States, but was taken in exchange for notes of the Bank of Kentucky, and a check of the former on the latter bank nominally equal in amount to the note. It reserved on its face the legal rate of interest only. The notes of the Bank of Kentucky were depreciated in their marketable value at the time of the exchange, and the case resolved itself, to use the language of Story, J., "into this inquiry: whether upon the evidence there was any corrupt agreement or device or shift to reserve or take usury." The instructions prayed for by the plaintiffs, submitting this question to the jury, had been refused; and the court, in substance, held the refusal improper, as the exchange of the notes was not *per se* usurious, but would depend for its validity on the intent of the parties in making it, which was a question of fact to be found by the jury. No principle on which the plaintiffs in this action can stand seems to be justly deducible from either of the cases cited.

In determining, however, the question whether the only remedy is by action to recover back the excess beyond six per cent, or by *quo warranto* on behalf of the state, it is necessary to consider whether the legislature intended to prohibit the act or contract. Upon the facts proved on the trial of this case the parties in legal effect mutually agreed the one to deliver and the other to receive the note in suit upon a discount payable in advance at the rate of seven per cent; and this agreement, so far as the execution and delivery of the note and the taking of the discount are concerned, was consummated. But the statute expressly declares that upon such a note "the corporation *shall not take or receive more than at and after the rate of six per cent per annum in advance.*" This language is unequivocal and imperative. It forbids in plain words the act of taking or receiving beyond the specified rate, and by force of the terms it prohibits the making of the contract by or upon which a greater amount is taken. If a contract were reduced to writing by which the bank bound itself to discount for the defendants notes such as the one in suit at seven

per cent in advance, and an action were brought to enforce the contract or recover for its breach, no lawyer would insist that a recovery could be had upon it ; its illegality would be transparent, and the bank would have the full benefit of the rule, *potior est conditio defendentis.* But here the contract is executed, so far as relates to the act of discounting ; the bank has performed the agreement, has taken the note and the illegal discount upon it, and now comes into court *and asks to enjoy the fruits of the transaction.* True, say the plaintiffs, the act or agreement under which we acquired title to the note was prohibited by law ; nevertheless the law should aid us to enforce the note by suit and then punish us for acquiring it unlawfully. " The answer," to quote the language of John-son, J., in the *Bank of the United States* v. *Owens*, (2 *Peters*, 257,) " would seem to be plain and obvious, that no court of justice can in its nature be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a coun-try ; how can they then become auxiliary to the consummation of violations of law ?"

The long established maxim of the law, " *ex turpi causa non oritur actio*," is equally applicable where the act or contract is prohibited by statute, either expressly or by implication, as when it is *contra bonos mores.* " It is quite clear," says Lord Eldon in *Ex parte Dysler*, (2 *Rose*, 351,) " that a court of just-ice can give no assistance to the enforcement of contracts, which the law of the land has interdicted ;" and in *Aubert* v. *Maze*, (2 *B. & P.* 374,) it is expressly affirmed that there is no distinction, as to vitiating the contract, between *malum in se* and *malum prohibitum.* In *Watts* v. *Brooks*, (3 *Ves. Jr.* 612,) the court says : "There is nothing unusual in this transaction, but it is against a prohibitory statute. I doubt a little the policy of the act, but I cannot allow it to be argued that you can break a law covertly. The court will not exe-cute the contracts."

The English cases in which this maxim has been applied and enforced are numerous and very decisive. (*See Broom's*

*Legal Maxims, 4th ed. 463, and notes.*) Our own courts have not hesitated to apply the maxim in its true spirit whenever the occasion has demanded. *Leavitt* v. *Palmer,* (3 *Comst.* 19,) and *Talmage* v. *Pell,* (3 *Seld.* 328,) are strong cases to establish the invalidity of contracts made in violation of the express or implied prohibition of statutes; and the·right of the receivers of corporations to set aside the illegal transaction for the benefit of creditors. In *Swift* v. *Beers,* (3 *Denio* 70,) the court refused to permit a recovery against the guarantor of a note, which on its face, was a violation of the act of 1840, prohibiting the issuing of post notes by banking associations.

But to enumerate here the various cases in which "this principle has been practically applied, would be to incur the imputation of vain parade." Enough has been said to show that where the contract sought to be enforced, springs out of a violation of the statutes of the state, the court "will leave the parties to the illegal transaction where it finds them, withholding from both its aid in enforcing it." (*See Justice Sill in Tylee* v. *Yates,* 3 *Barb.* 228.) "It is upon that ground the court goes, not for the sake of the defendant," says Lord Mansfield, "but because they will not lend their aid to such a plaintiff."

The plaintiffs' counsel argued that the amount of the excessive interest taken in this case, is so small that the court should rather attribute its taking to mistake than to a corrupt and intentional violation of the statute; but the case is not open to this suggestion. The rate of seven per cent was knowingly taken, and this operates as a violation of the statute whether the officers of the bank knew of its existence and intended to disregard it or not. Corporations, like natural persons, must be held to intend the consequences of their acts. "It is sufficient," says Lord Stowell, "if there is a contravention of the law, if there is a *fraus in legem ;* whether that may have arisen from mistaken apprehension, from carelessness, or from any other cause, it is not material to inquire. In these

cases it is not necessary to prove actual and personal fraud." (*The Reward*, 2 *Dods. Adm. R.* 271.)

The case was open to the plaintiff to show the facts affirmatively, as they were bound to do if they would excuse themselves, on the ground of actual mistake in calculation. In the absence of such evidence the law must presume against them.

From these conclusions, it follows that this court cannot lend itself to aid the plaintiffs to secure the fruits of their infraction of the statute, and the judgment below must be affirmed.

[ERIE GENERAL TERM, February 1, 1858. *Davis*, *Marvin* and *Greene*, Justices.]