### STEWART v. MAHONEY.

[See 5 Fed. 302].

STEWART (MILLER v.). See Case No. 9 591.

## Case No. 13,435.

### STEWART v. NATIONAL UNION BANK OF MARYLAND.

[2 Abb. U. S. 424; 2 Balt. Law. Trans. 951; 1 Thomp. Nat. Bank Cas. 175; 4 Am. Law Rev. 397; 10 Int. Rev. Rec. 132.] [1]

Circuit Court, D. Maryland. Oct.. 1869.

CREDITOR'S BILL—POWERS OF NATIONAL BANKS— VOID CONTRACTS.

1. By a creditor's bill it appeared that the judgment debtor had assigned certain assets,

[1] [Reported by Benjamin Vaughan Abbott, Esq.. and here reprinted by permission. 4 Am. Law Rev. 397, contains only a partial report.]

which complainant sought to reach, to a national bank, made a defendant, as collateral security for a loan, and had afterwards, but before the bankrupt act of 1867 [14 Stat. 517], took effect, made a general assignment to trustees for the benefit of creditors. The bill charged that the loan made by the bank was void for exceeding the corporate powers, and that the bank therefore acquired no title to the assets received as collateral. The general assignment was not assailed. *Held,* on demurrer, that the bill showed no right in the complainant to relief from the assets in question; for, if they did not vest in the bank by the assignment attacked by the bill, they must have vested in the trustees under the general assignment.

2. A loan made by a national bank in excess of the restriction imposed by section 29 of the national banks act of June 3, 1864 (13 Stat. 99),—which provides that the total liabilities to any banking association, of any borrower, shall not at any time exceed one-tenth of the capital stock,—is not void upon that account. The loan may be enforced; though (by section 53) the bank is exposed to forfeiture of its franchise, and the officers participating are declared personally liable.

[See Shoemaker v. National Mechanics' Bank, Case No. 12,801.]

[Cited in brief in Weckler v. First Nat. Bank of Hagerstown, 42 Md. 587; Wherry v. Hale, 77 Mo. 22.]

3. Although a loan made by a corporation appear to be in excess of a limit imposed by statute, and therefore not enforceable, yet, if it has been executed by the parties, a court of equity will not interpose, at the suit of a creditor of the borrower, to cancel the transaction and compel a return of the securities, but will leave the parties where it finds them.

Demurrer to a bill in equity.

GILES, District Judge. The complainant in this case filed a general creditor's bill against the defendants, alleging, among other things, that he was and is a creditor of Bayne & Co. to a large amount; that Bayne & Co. are bankrupts; that the National Union Bank, the National Mechanics' Bank, and the National Exchange Bank are national banks, organized under the act of congress entitled "An act to provide a national currency," approved June 3, 1864; that section 29 of said act provides "that the total liabilities to any association of any person or of any company, corporation, or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid:" that on May 3, 1866, the loans to Bayne & Co. by the National Union Bank amounted to two hundred and eighty-seven thousand six hundred and forty-one dollars and thirty-one cents; by the National Mechanics' Bank to three hundred and seventy-seven thousand four hundred and forty-four dollars and seventeen cents; and by the National Exchange Bank to one hundred and forty thousand four hundred and thirty-one dollars and twenty-nine cents; which loans were made with the knowledge and permission of the directors of said banks, and were not within the reservations or provisos of section 29; that the largest part of the assets of Bayne & Co. are deposited with and held as collateral security by said national banks, defendants, for the illegal loans, so made by them to Bayne & Co.; that of such collaterals, the National Mechanics' Bank held three hundred and eighty-five thousand eight hundred and sixty-four dollars, the National Union Bank three hundred thousand one hundred and thirty-nine dollars, and the National Exchange Bank one hundred and sixty-four thousand two hundred and fifty dollars; that the capital stock of the said National Mechanics' Bank is six hundred thousand dollars, of the said National Union Bank is one million two hundred thousand dollars, and of the National Exchange Bank four hundred thousand dollars; that the loans to Bayne & Co. by said banks were, on May 3, 1866, largely in excess of the ten per cent, of their respective capitals actually paid in, and therefore contrary to law, and a fraud on the rights of complainant and other creditors of Bayne & Co. The bill prays for a discovery of the amount and nature of said collaterals, also of all transactions between Bayne & Co. and the banks, and for an order of this court transferring the collaterals so held by the banks to the assignee in bankruptcy of Bayne & Co. for adjustment of rights between their creditors, for a decree in favor of complainant, and for general relief.

To all that part of the bill which attacks these loans made by the banks on the ground that they are void by section 29 of the act of 1864, and prays for a decree of this court ordering them to be transferred to the assignee of Bayne & Co., the banks demur; and for cause of demurrer show "that according to the true construction of the act of 1864, the complainant has no right to call upon this court to examine into and decide upon the matters above demurred to, but the same are examinable only at the instance and suit of the government of the United States and its authorized officer, and in conformity with the provisions of said act." "And that the said matters, as alleged, do not affect the validity of the said loan by these defendants to the said Bayne & Co., nor do they destroy, invalidate, or affect the title of these defendants to the said collaterals and securities."

The issues raised by this demurrer are two. First, the right of complainant to the relief sought in his bill against the banks; and second, the validity under the act of congress of the loans so as aforesaid made by the said banks to Bayne & Co.

There is also a prayer in the bill for a decree for an account to be filed by Wm. Bayne, Allen A. Chapman, and Horatio R. Riddle, trustees under a deed of trust executed by Bayne & Co. on May 5, 1866; but with that part of the bill we have nothing to do at present. This case has been heard alone upon the bill of complaint, and demurrer filed by the banks, and the question to

be now decided by the court is: Does the bill show such a case as entitles the complainant to the relief he seeks against the said banks? He prays for a decree against the said banks compelling them to transfer and hand over to the assignee in bankruptcy of Bayne & Co all the collaterals which the banks received from Bayne & Co., as security for the loans made to them from time to time by the banks. Now, could such a decree be passed by this court and such relief granted, in view of the fact that Bayne & Co. had by a deed of trust (as is shown), on May 5, 1866, conveyed all their assets, of whatever kind, to trustees for the benefit of their creditors, the deed being executed before the passage of the bankrupt act, and more than six months before Bayne, Hough & Honeywell filed their petitions to be declared bankrupts. That deed has not been assailed, although allegations are made in the bill against the trustees, and they are charged with fraud and collusion. Now, it appears to me that if the complainant be right in his view and construction of section 29 of the general banking law of 1864, "that all loans made to any one beyond the amount prescribed in that section are absolutely void; and that the banks have no title to any collateral security given to them for such loans," yet he is not entitled to the relief he now seeks. Under such construction of the law, the title to these collaterals passed by the deed of trust, and if the trustees have failed duly to execute the trust confided to them, a court of equity would remove them and substitute others in their place; and, if the bill filed for that purpose made the banks parties, the court could decree such relief as would be equitable and just under the circumstances.

This disposes of that part of the case now submitted to me, and I might rest my decision here; but as the second issue raised by the demurrer has been argued at length and with great ability by the complainant and the learned counsel engaged in the cause, and as I have carefully examined all the authorities referred to, I shall state briefly the conclusions to which I have arrived as to the true construction of section 29, and of the rights of the parties to such loans as are here alleged. Now, it is observable that this section only provides, "that the total liabilities to any association, of any person, or of any company, corporation, or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock actually paid in." It contains no penalty, and no provision "that such loans shall be void."

In the very next section (section 30), which regulates the rate of interest, it is provided, that "the knowingly taking, receiving, reserving, or charging a rate of interest greater than aforesaid, shall be held and ad-judged a forfeiture of the entire interest," etc. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same.

So in section 31 it is enacted, that every association in certain cities "shall always keep on hand, in lawful money, twenty-five per centum of the aggregate amount of its notes in circulation and its deposits. And if any association, whose lawful money shall fall below the amount aforesaid required to be kept on hand, shall fail for thirty days after notice, to make good such reserve, the comptroller of the currency, with the concurrence of the secretary of the treasury, may appoint a receiver to wind up the business of such association."

See, also, section 52, in which all transfers of the notes, bonds, and other evidences of debt owing to any association, and of any and all property belonging to the association, made after the commission of an act of bankruptcy, etc., are declared null and void.

Now, when you read these sections, and find no such provision of forfeiture in section 29, but find that in section 53 provision is made, "that if the directors of any association shall knowingly violate any of the provisions of this act, all the rights, privileges, and franchises of the association, derived from this act, shall be thereby forfeited—such violation shall, however, be determined and adjudged by a proper district or circuit court, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be declared dissolved"—the conclusion seems to be irresistible, that congress never intended by section 29 to forfeit all loans made in excess of the amount specified in section 29, no matter whether they were made through inadvertence or by mistake, for the forfeiture provided for in section 53 depends upon the guilty knowledge of officers making it.

The general banking powers are granted by section 8 of the act in the following terms: "And exercise under this act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, by receiving deposits, by buying and selling exchange, coin, and bullion, by loaning money on personal security, and by obtaining, issuing, and circulating notes according to the provisions of this act." The grant of banking powers is full and ample in this section, and in view of the whole act it appears to me that section 29, like many other sections of the act, is directory only, and for its violation there is no forfeiture but the one provided for in section 53. That section, it is admitted, applies to all violations of section 29, with guilty knowledge, and there can be no clearer rule for the interpretation of stat-

utes than to hold that, where congress has expressly provided a penalty for the commission of any act, you are not so to construe the statute as to add, in addition any common law forfeiture or penalty. So that it appears to me that although these loans made by defendants, the three banking associations above named, exceeded in amount one-tenth part of the amount of their capital stocks actually paid in, the loans are not void, and if the associations were now in court, seeking to recover the same, I should have great difficulty in permitting Bayne & Co., or any one claiming through them, to set up this defense.

But can there be any doubt of this principle, that where the contracts are executed, even if the court would not have enforced them, the court will leave the parties where it finds them, giving aid or relief to neither? The learned counsel for the complainant, in his very full argument, seemed to feel the force of this principle, and to try to escape from its application. He contended that it did not apply to this case, and that if these defendants could not sustain an action in a court of law on these contracts, the court must overrule the demurrer.

The cases to which he referred, I have examined, and it does not appear to me that they sustain this position. In the case of Bank of U. S. v. Owens [2 Pet. (27 U. S.) 527], the court decided that the bank could not recover upon a note which had been discounted at more than six per cent. interest. The bank charter forbids the taking a greater rate of interest than six per cent., but it did not declare such a contract void. The court held such a contract void on general principles, and that courts could not lend their aid to enforce such contracts. I have examined the charter of the bank, and it contains no clause imposing any penalty whatever on the taking of more than six per cent. interest. It was, then, a prohibition without any specific penalty, and congress must be supposed to have left the violation of the section to the common law penalty of a denial by the courts to enforce such a contract.

The case of Leavitt v. Palmer, 3 N. Y. (3 Comst.) 19, was decided on similar grounds. In that case the court held that the notes issued by an institution in violation of the provisions of the general banking law of New York, which might circulate as a currency and the deed of trust to secure the same, were void. It did not touch the question of the validity of the original advance by the London house.

The case of Seneca County Bank v. Lamb, 26 Barb. 595, only decides what the supreme court had decided in [Bank of U. S. v. Owens], 2 Pet. [27 U. S. 527], that a bank that has discounted paper, taking more than six per cent. interest, cannot recover upon the paper thus discounted. The court in their opinion, say: "It will leave the parties to such a contract where it finds them."

To the same effect is the case of President, etc., of Bank of Chillicothe v. Swayne, 8 Ohio, 280; and the case of Miami Exporting Co. v. Clark, 13 Ohio, 1.

In the case of Albert v. Savings Bank of Baltimore, 2 Md. 160, the court only decided that although the contract was executed, yet the cestui que trust whose property had been assigned unlawfully to the bank could have relief in a court of equity. That is not this case.

The case of Coppell v. Hall, 7 Wall. [74 U. S.] 542, only decided that upon a contract for the purchase of cotton, in violation of the non-intercourse acts, during the late civil war, there could be no recovery in the courts of the United States.

The case of Hagan v. Walker, 14 How. [55 U. S.] 29, is not applicable to this case; and the case of Cheney v. Duke, 10 Gill. & J. 11, is, if applicable at all, in favor of the defendants. The court of appeals in that case held that the mere omission of the vendor of a slave to give a bill of sale as required by the act of 1817, c. 112, would not prevent his maintaining an action for the purchase money.

I consider the law of this case settled by the decisions to which I shall now refer. In the case of Mott v. United States Trust Co., 19 Barb. 569, the court held that a person who has borrowed money from a savings institution upon his promissory note, secured by a pledge of bank stock, was not entitled to an injunction to prevent the prosecution of the note on the ground that the savings bank was prohibited by its charter from making loans of that description. So, in the case of Tracy v. Talmage, 14 N. Y. (4 Kern.) 162, the court held, that while the certificates of deposit given in violation of law were void, yet that the plaintiff could recover whatever the stocks sold were worth at the time of sale, leaving the contract of sale, so far as it had been executed by payment or its equivalent, undisturbed; and in the case of Bates v. Bank of Alabama, 2 Ala. 459, the court decided that a clause in the bank charter similar to section 29 of the act of 1864, was directory merely, and that, if it were disregarded, no one party to its violation could take advantage of it.

The case of Harris v. Runnels, 12 How. [53 U. S.] 80, is directly in point, and sustains the view I have taken of the construction of section 29. That was an action brought to recover the price of slaves brought into Mississippi, in contravention of a statute of that state regulating the importation of slaves. Section 4 provided that no slaves should be brought into the state without a previous certificate, etc., being obtained. Section 6 declared that both the seller and buyer of such slaves shall pay one hundred dollars for every slave so sold and imported in violation of the law. The supreme court says that "the two sections, considered conjunctively, seem to us to imply that the penalty only

without any other loss to either the seller or buyer, was to be inflicted," and the court held that the contract of sale was not void.

Now, although by the bill as originally filed, it would appear that the said banks held collaterals to a larger amount than their loans and advances, yet by the amended schedule and agreement of counsel in reference to the same, it is clearly shown that the advance made by the banks to Bayne & Co. far exceeds in amount the value of the collaterals they received from said firm.

The court, for the reasons I have given, will sustain the demurrer filed by the banks, and will sign a decree dismissing the bill as to them. Bill dismissed.