## Case No. 12,288.

SAMUEL v. HOLLADAY.

[Woolw. 400; McCahon, 214; 1 Kan. 612.] [1]

Circuit Court, D. Kansas. Oct. Term, 1869.

CORPORATIONS—BY-LAWS — CORPORATE PROPERTY —SUIT TO PROTECT—SHAREHOLDERS—MORTGAGES—FORECLOSURE—KANSAS STATUTE.

1. A bye-law adopted by a board of directors of a corporation, providing how special meetings of the board shall be called, does not affect third parties dealing with the corporation.

2. Proceedings of the board of directors at a special meeting not called in the manner prescribed by the bye-law, may be subsequently ratified by the corporation.

3. A contract of a corporation relative to personal property will be governed by the law of that state in which it is incorporated, and has its principal place of business, and within which the property is situated and the contract was made.

[Cited in Wheeler v. Sexton, 34 Fed. 155.]

[Cited in brief in People v. Ingersoll, 58 N. Y. 1.]

4. The act of Kansas relative to the foreclosure of mortgages construed. It was the intention of the legislature to provide in this act —(1) That mortgages of real estate should be foreclosed by proceedings in the court of the county in which the premises are situated. (2) That all deeds of trust, whether of real or personal property, should be foreclosed in the same manner as mortgages. (3) That all foreclosures, whether of mortgages or deeds of trust, and whether of real or personal property, should be by action in the courts under the Code of Civil Procedure.

5. A corporation which has conveyed its property in trust to secure a debt, retains the real ownership, although the legal title and right of possession is in the trustee. It is a necessary party to a suit to vindicate its rights in respect of such property as against a wrongdoer.

6. No decree will be rendered against a wrong-doer which will leave him exposed to a subsequent suit for the same matter.

7. The corporation is the only party which can settle a matter touching the corporate property. Through it the interests of its creditors must be worked out. It also represents the shareholders. who are only entitled to the surplus assets remaining after the payment of its debts.

8. A suit brought by two shareholders on behalf of all similarly situated who may come in to prosecute, which has been pending six years. without any other shareholder coming forward. when their interests are trifling compared with the whole number, will not be directed to stand over to add parties.

9. A bill is not entitled to the favorable consideration of the court which is filed and prosecuted by stockholders who do not show affirmatively that they have paid for their stock, in order, without the concurrence of the company, to recover corporate property, which has been sold after a notice of four months, during which time neither they nor the directors

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission. McCahon, 214. and 1 Kan. 612, contain only partial reports.]

nor the company endeavored to pay the debt on account of which the sale was made, or otherwise prevent its taking place.

10. Dodge v. Woolsey, 18 How. [59 U. S.] 331, considered. The following propositions are established by this case:

(1) In the case of an incorporated company, with capital stock divided into shares, which are held by individuals, the corporation and the shareholders are distinct legal persons, and can sue and be sued by each other.

(2) When the directors of such corporation have misapplied a portion of its funds, to which a shareholder has a distinct right—e. g., a dividend—he may recover the amount, so misapplied, and if this has not been effected, but only threatened, he may enjoin it.

[Cited in Hawes v. Contra Costa Water Co., 104 U. S. 457.]

[Cited in Steiner v. Parsons (Ala.) 13 South. 774.]

(3) When a corporation, or its rights of property, are threatened with an injury, such as a court of equity will enjoin, but refuses to take legal steps to protect its rights, a stockholder may maintain a bill against the party threatening the mischief and the corporation, to restrain the commission of the act, in order to protect his interest from immediate damage.

[Cited in Heath v. Erie Railway Co., Case No. 6,306.]

(4) No dictum, in this opinion, goes the length of asserting that when a corporation has a cause of action against a party, an individual stockholder may prosecute it simply because the corporation refuses to do so.

The Central Overland California & Pike's Peak Express Company was incorporated by the legislature of the territory of Kansas, with an authorized capital stock of $1,000,000, represented by shares of $100 each. It was, among other things, authorized to, and it did, establish, maintain, and operate a line of stages, running from Leavenworth and Atchison, in Kansas, to certain towns in Colorado, and thence to Great Salt Lake City, in Utah. By the charter, the management of its business was intrusted to a board of directors, not less than three, nor more than nine, in number; and by one section, the directors were empowered "to make and prescribe such bye-laws, rules, and regulations as they shall deem proper respecting the management and disposition of the stock, property, and estate of the company."

A set of bye-laws were accordingly adopted by the directors, among which were the following: "Special meetings may be called by the president. . . . The purpose and object of such meetings shall be stated in writing by the parties calling the same, and filed with the secretary of the company. Written or printed notice, either by personal service, or by mailing the same directed to his usual or reputed place of business, paying the postage on the same, of all special meetings of the board of directors, shall be given to each director. At no special meeting shall any other business be introduced except that referred to in such notice, unless with a consent of a majority of the whole board expressed by their votes at said meeting."

These provisions of the charter and of the bye-laws being in force, and when the whole number of directors was seven,—that is, on the 5th day of July, 1861,—a special meeting of the board, attended by five of its members, was held at the company's office in Leavenworth. The meeting was called verbally about twenty-four hours before it convened. At this time the corporate property, consisting of animals and vehicles, stations and buildings scattered along its stage route, and used in the course of its business, was of the value of about $500,000; and it had a contract for carrying the United States mail over its route, from which it was to receive annually $475,000 in quarterly payments. But its affairs had become seriously embarrassed, and Holladay had advanced to it considerable sums of money, and had become liable as indorser and acceptor of its paper for considerable sums further, in all amounting to about $200,000. At this special meeting, by the unanimous vote of all the directors present, the president was authorized to execute to Holladay a bond and deed of trust upon all the corporate property, to secure him on account of the said advances and liabilities, and for such further sums as he should thereafter advance, and such further liabilities as he should thereafter assume. Accordingly, on the 22d day of November, 1861, the president made to Holladay a bond of the company for the payment of all sums which he had become or should become liable for, and of all sums which he had paid or should pay on its account, and also made to Theodore F. Warner and Robert L. Pease a deed of trust in the name of the company, conveying all its property, including the contract for carrying the mail. In this deed of trust it was provided, that if the company should make default in the performance of the condition of the bond, the trustees, Warner and Pease, upon Holladay's request, should take possession of all the property conveyed, thereafter continue the business, and, upon a notice of twenty days, to be advertised in a newspaper published at Atchison, sell all the property, and out of the proceeds pay what was going to Holladay, and render the surplus to the company. There were a number of stringent provisions in the deed of trust not necessary here to state. Holladay claiming that default had been made in the condition of the bond, on the 6th of December the trustees took possession of the line, business, and property of the company, and advertised a sale for the 31st of December. The sale was adjourned from time to time, and at length took place on the 22d of March, 1862, when Holladay was the purchaser for $100,000. He thereupon took possession of the line, business and property, and continued to run the stages and to perform the mail service, and receive the amount coming therefor, until long after this suit was brought. The bill charges, and the plaintiffs claimed, that the proofs supported

the charges against him, the trustees, and the president, of many acts of fraud and oppression; but in the view taken of the case by the court, they were not material.

After the property thus came into Holladay's possession, the directors of the company, being advised of the proceedings, continued to treat with him as if what had been done was regular, and tacitly, and by some affirmative acts, recognized his rights and claims under the deed of trust. These plaintiffs were stockholders in the company, Samuel holding 381 shares, the number held by Street not appearing. Nor did it appear that either of them ever paid up the assessments on their shares, or otherwise had a pecuniary interest thereunder; while, on the other hand, it appeared that the company's debts, including some $200,000 due to Holladay, exceeded the value of the property sold to him. On the 1st of April, 1862, these plaintiffs applied to the board of directors, at a regular meeting held on that day, to institute legal proceedings to protect the company's rights and interests in the property, and to recover the possession of it, which request was refused; for which reason these plaintiffs, as stockholders of the company, bring this suit on their own behalf, and on behalf of all others similarly situated, who shall come in and contribute to the expenses of the suit.

The bill was filed July 7, 1862. It prays an injunction restraining the said Holladay from disposing of the property, and a decree declaring the deed of trust and the sale thereunder to be void, and restoring the property to the corporation. The company was named as a defendant in the bill, but was never served with process, and never appeared. No injunction was ever applied for; and pending the suit, Holladay disposed of the property to third parties. The cause was heard on pleadings and proofs.

Mr. Crozier, for plaintiffs.
Mr. Stringfellow, for defendants.

MILLER, Circuit Justice. This is a bill in chancery, brought by the plaintiffs, as shareholders in the express company, against the corporation and others, and especially against Ben Holladay. The ground of the complaint is this: That the express company made a deed of trust to Pease and Warner, nominally to secure to Holladay certain sums of money which he had advanced to it; that a sale of the property thereby conveyed was made by the trustees to said Holladay; that the deed was illegal, because, as is alleged, it was not authorized by the company; that even if the deed were valid, the sale under it is void, because no sufficient notice of it was given, and because it violated a statute of the state of Kansas, and because property of the value of over $500,000 was sold for $100,000. There are also specific charges of fraud against Holladay, made to avoid both the deed and the sale. The plaintiffs claim

that they, as stockholders, have a right to ask relief for these grievances in a court of chancery, because the corporation has refused, although requested by them, to take any steps in that direction. The relief prayed for is: That the deed of trust, which is called a mortgage, be decreed null, and the sale fraudulent and void; that the property be restored to the express company; and that the defendants, except the express company, be restrained from proceeding to sell or dispose of the property under the mortgage, and from using or in any way interfering with it; and that the complainants have such other and further relief as the nature of their case may require.

It is very obvious that much of the specific relief here asked is now impossible. It appears that the sale of the property under the deed of trust was made on the 22d day of March, 1862, and the bill was not filed until the 7th of July following. The property was delivered to Holladay on the day of sale. No injunction or other order has been made concerning its custody up to the present time, a period of six years. It consisted of horses, coaches, and other personal property, appropriate to carrying the mail, and to the carrying business generally, over the route indicated by the name of the corporation. A decree to enjoin the use of that property, or for its restoration to the company, or to prevent interference with it, would be nugatory, because no such property can now be found.

But if the deed of trust should be declared void, or the sale under it invalid or fraudulent, a liability may, under some circumstances, be found to exist on the part of Holladay, or of the trustees, to account for the property or its proceeds. We therefore proceed to inquire whether this, the only relief in the power of the court to grant, is sustained by the case made by the plaintiffs, and by the rules of equity jurisprudence. It is charged that the deed of trust is void, because the meeting of the board of directors at which the president of the company was authorized to execute such an instrument was held without the notice prescribed for such meetings by the bye-laws of the company. This point has been much urged in argument, but it cannot prevail.

1. Such a bye-law, when made by the board of directors for their government, cannot be extended to affect contracts with third persons. There are many cases in which it has been held that notice of special meetings must be given as required by the bye-laws, or the meetings would be wholly without authority, and all business attempted to be then done would be of no binding force upon the corporation. Kynaston v. Mayor of Shrewsbury, 2 Strange. 1051; King v. Theodorick, 8 East, 543; Stow v. Wyse, 7 Conn. 214; Warner v. Mower, 11 Vt. 385; State v. Ancker, 2 Rich. Law. 245. But in all these cases, and in the others in which the same

rule is laid down, the bye-laws were made by the stockholders at the annual or stated meeting, under the authority and direction of a provision of the charter. In such case the stockholders may be supposed to retain a control over the management of their affairs, and intend to put a restraint on their agents. Their will, expressed in the bye-law, becomes a rule to the directors. Brick Presbyterian Church v. Mayor, etc., of. New York, 5 Cow. 538. It cannot be disregarded any more than a provision in the charter.

But the reason for the rule fails when the bye-law is made by the directors for the government of themselves in the management of the business of the corporation. The same power which enacts can repeal the law. It is merely a guide for their own convenience, and for the orderly conduct of their business. It cannot be extended to affect the validity of their acts done in disregard of it, especially when third parties are concerned. Mechanics' & Farmers' Bank v. Smith, 19 Johns. 115; Seneca County Bank v. Lamb, 26 Barb. 595; Com. Dig. "Bye-Law," c. 2; Dodwell v. University of Oxford, 2 Vent. 33; In re Vandine, 6 Pick. 187; Sargent v. Essex Marine Ry. Corp., 9 Pick. 201; Com. v. Mayor of Lancaster, 5 Watts, 152.

2. The notice given of the meeting was a substantial compliance with the bye-law. The fact that a fair notice of the meeting, and of the object for which it was called, was given to each director who was within reach, is conceded. It is quite immaterial how that notice was given, whether verbally or by a formal written notice. Rex v. Grimes, 5 Burrows, 2601; Rex v. Major, etc., of Carlisle, 1 Strange. 386; Savings Bank v. Davis, 8 Conn. 191.

3. There is ample evidence of the ratification of the proceedings of the meeting by subsequent acts of the board of directors. The rule is very well settled, and is supported by abundant reasons, that where, at a meeting of a board of directors of a corporation formed for purposes of pecuniary profit, an act is ordered to be done without objection either then or subsequently made to the regularity of the meeting by any director or stockholder, and the act thus authorized is afterwards performed, its legality cannot afterwards be questioned in a suit in equity on the ground of irregularity. Thus, in Leavitt v. Yates, 4 Edw. Ch. 134. it was held that a deed of a corporation executed pursuant to the direction of a quorum of the directors, no objection being taken at the time nor afterwards by any member of the board, must be considered as the corporate act, whether the meeting was duly convened or not. Bank of State of Alabama v. Comegys, 12 Ala. (N. S.) 772; Williams v. Christian Female College, 29 Mo. 250; Port of London Assur. Co.'s Case, 35 Eng. Law & Eq. 178; Hoyt v. Thompson, 19 N. Y. 207. There are some objections taken in the bill to the terms of the deed of trust,

but these were properly abandoned on the argument. We are therefore of opinion that the deed of trust is a valid instrument, and that the acts of the trustees, in taking possession of the property and conducting the operations of the express company according to its terms, were legal and proper.

But to the sale and its validity, objections of a more formidable character are urged. The company was incorporated by the legislature of the territory of Kansas. The property affected by this deed of trust was personalty, and the most of it was located in this state. The principal place at which its business was conducted was in this state. The deed of trust was executed, acknowledged, and recorded, and the sale under it was made, in this state. The instrument, the powers which it confers, and the acts done under it, must be governed by the laws of this state.

A statute of the territory in force when this instrument was made contained the following sections:

"Section 1. That mortgages upon real estate given to secure the payment of money, shall be foreclosed by petition in the district court of the county in which the real estate is situated, or of the county to which the county in which the real estate is situated is attached for judicial purposes.

"Sec. 2. All deeds of real estate given to secure the payment of money shall be deemed mortgages within the meaning of this act, and shall be foreclosed in the same manner as mortgages on real estate are foreclosed.

"Sec. 3. All proceedings to foreclose mortgages shall be conducted in conformity to the provisions of an act entitled 'An act to establish a Code of Civil Procedure,' passed at the present session of the legislative assembly."

It is insisted on the part of the plaintiffs, that the power of sale contained in the deed of trust here in question was inoperative, because the statute cited forbade a sale under it. It is conceded that until the passage of the statute the equity of redemption might be cut off by the exercise of such power, and that since its passage a foreclosure can be effected only by a decree of the proper court. The contention is. that the provisions of the statute do not apply to mortgages or deeds of trust of personal property.

This construction is based upon the idea that, as the first section refers exclusively to mortgages of real estate and the manner of foreclosing them, and as the two succeeding sections have reference to the former one, they also are to be limited in their application to the same species of property. If the language of the statute, fairly construed, will support this view, the court will not be inclined to hold that the innovation introduced by the legislature was designed to extend further.

A close examination of the three sections of the act shows that the main purpose of the first was not to prohibit the foreclosure of mortgages according to their provisions, when

they contained a power of sale, but merely to designate in what county the suit should be brought when judicial process was resorted to. If this section stood alone, I should think that this was its only purpose.

The second section has two purposes: First, to place deeds of trust on the same footing as mortgages; and, secondly, to require that they should be foreclosed in the same manner as mortgages. The construction contended for by the plaintiffs requires us not only to disregard the word "all" as affecting its meaning, but to interpolate the words "real estate" after the words "deeds of trust"; so that, instead of reading, as it does, "All deeds of trust given to secure the payment of money," we shall read, "Deeds of trust upon real estate given to secure the payment of money." The difference is clear. When the legislature, which in the previous section had made a provision which, by its terms, was limited to real estate, drops the limiting words and makes a provision which includes all deeds of trust, it would be carrying judicial construction quite too far to say that by the latter phrase they meant no more than by the former.

But we are asked, inasmuch as the foreclosure of mortgages by the exercise of the power of sale contained in them is not prohibited by the first section, why deeds of trust may not be foreclosed by that process when the second section provides that they shall be foreclosed in the same manner as mortgages of real estate. The answer is that the third section requires all mortgage foreclosures to be according to the Code of Civil Procedure, that is by action and by judgment and sale.

Taking the act altogether, it seems reasonably clear that the intention of the legislature was to provide: (1) That mortgages of real estate should be foreclosed by proceedings in the district court of the county where the land was situated. (2) That all deeds of trust, whether of real or personal property, should, in respect of foreclosing the equity of redemption, be placed on the same footing as mortgages of real estate. (3) That all foreclosures, whether of mortgages or deeds of trust, and whether covering real or personal property, should be by proceedings in court under the Code of Civil Procedure. I regret that the courts of the state have not placed a construction upon this act. Had they done so I should gladly have followed their ruling.

The sale of the property of the express company to Holladay, without judicial proceedings under the authority of the power of sale contained in the deed of trust, violated the statute in force at the time when the instrument was made. It was therefore without authority, and in making it the trustees violated their trust. It follows that they and Holladay, the purchaser, are answerable for the proceeds of the property thus disposed of in the court of chancery, which has special jurisdiction of trusts. As the property has passed out of their hands and cannot be restored, they may be held to account for its value to the party entitled to it.

Who is this party? Obviously the express company. The wrong done by the unauthorized sale was suffered by it; although the legal title and right of possession was in the trustees, yet the equitable interest, the real ownership, was in the corporation. With it, and with it alone, an effective settlement could be made. It represents the creditors whose claims upon the fund to be recovered from Holladay and from the trustees are to be worked out through it. It represents the stockholders, including these plaintiffs, who seek relief here by reason of an injury inflicted upon it.

But this indispensable party is not before us. It is named in the bill as a defendant, but it has not been served with process nor appeared to the suit. I have before me now two subpoenas in chancery, issued at different times, both of which the marshal was directed to serve upon the company, but to each of them he returns that that defendant is not found in his district. It is not a party to, and cannot be affected by, the decree, whatever its terms, which we may render. Were we to-day to render a decree according to the prayer of the bill, or according to the modified relief now sought, it could to-morrow bring and maintain its bill against the same defendants, complaining of the same injuries, and seeking the same remedies; and yet our determination afford them no protection to the second inquiry into their conduct. It needs no words to explain that this cannot be. Holladay and the trustees have each a right to claim that the decree, if one be rendered against them, shall be in such terms and have such effect that it shall conclude all parties interested, and not leave them liable to be again called in question on account of the same matters.

There is good reason to believe, from certain testimony in the case, that the corporation might be served with process; and it is within the discretion of the court to order the cause to stand over in order that it may be brought in. There are, however, reasons why this course should not be pursued here.

1. This suit is brought by two stockholders on their own behalf, and on behalf of all others similarly situated who might come in and take part in the litigation. During the six years of the pendency of this bill, no other stockholder has come forward. The corporation is shown to be involved in debt. Holladay himself holds against it demands amounting to $200,000, with which he is entitled to be credited upon the sum which may be recovered from him. The other debts exceed the value of the property which he wrongfully converted, and these must first be paid out of the fund to be recovered before anything could be distributed among the stockholders. The number of shares is 10,000, of which these plaintiffs only hold 381. They have not shown that they have paid the assessments even upon them. It is evident that their in-

terest is merely nominal, that they have no pecuniary interest whatever.

2. The plaintiffs' conduct does not commend them to a court of equity. The trustees held possession of the property four months before the sale. During all this time the sale was advertised, and during a part of it one of the plaintiffs was a director in the company. Both of them knew that the possession of the property was in the trustees, that the business had been taken out of the hands of the officers of the company, and that the sale was impending. Payment to Holladay of what was due him, at any time during those four months, would have prevented the catastrophe which in effect extinguished not only its business, but its existence. And yet neither of the plaintiffs made any efforts, or called upon the directors to make any efforts, to save it by raising the money and tendering payment of what was due. To the present hour no effort to redeem has been made. By this course of conduct they have acquiesced in the proceedings taken by or on behalf of Holladay, and are concluded thereby. If a stockholder intends to treat an act of the corporation, or of its officers or agents, as illegal, he must insist upon his objections before the act is committed. He cannot stand by and see it done, and then hold the persons responsible who have been involved in it. Hodges v. New England Screw Co., 3 R. I. 9; Peabody v. Flint, 6 Allen, 52; Graham v. Birkenhead, L. & C. Ry. Co., 12 Beav. 460; 2 Macn. & G. 146; 2 Hall & T. 450; 20 Law J. Ch. (N. S.) 445; 14 Jur. 494; Hodgson v. Earl of Powis, 1 De Gex, M. & G. 6; 21 Law J. Ch. (N. S.) 17; 15 Jur. 1022; Ffooks v. London & S. W. Ry. Co., 17 Jur. 365.

We thus see that these plaintiffs are without real pecuniary interest in the matter, and have acquiesced in the commission of the acts of which they now complain; and being in this situation, have stirred up a serious and bitter litigation, which the real party in interest declines when called upon to commence, or to participate in when commenced by others. They are not entitled to the favor of having the cause stand over in order to compel the appearance of the corporation.

3. Nor do they hold such a relation to the only relief which the court can give as to enable them to prosecute this suit as plaintiffs. This objection is fatal in any aspect which the case can be made to assume. The claim of a shareholder to come into a court of equity and ask that the rights of the corporation which it declines to assert be protected against injuries inflicted, or threatened by third parties, has received of late years much consideration. There is also some conflict of authority on the subject; but the supreme court of the United States, whose opinion is conclusive here, has gone as far as any other court in permitting shareholders to interfere in such matters, and if it has laid down principles which exclude these plaintiffs from the relief sought by them, it is use-

less to look further for authority on the subject.

The case of Dodge v. Woolsey, 18 How. [59 U. S.] 331, is, in some respects, analogous to the present, and is the sole authority relied on by the counsel for the plaintiffs to sustain their right to maintain this suit. In that case, the plaintiff was a stockholder in a bank incorporated and doing business in the state of Ohio. The defendant, Dodge, was about to collect by distress certain taxes, which were illegal, from the bank. The plaintiff requested the bank to take legal steps to prevent this, but it declined to do so. The supreme court held that he could maintain his suit against the collector for an injunction, making the bank also a party. In coming to this conclusion, the court examine fully the considerations on which the right of the plaintiff to maintain the suit rests, and cite numerous authorities on the question.

I think I am correct in stating that the propositions supposed by the court to be established by this examination may be stated thus:

1. That in case of an incorporated company with a capital stock divided into shares, and held by individuals, the corporation and the shareholders are distinct legal persons, and can sue and be sued by each other.

2. When the directors of a corporation have misapplied a portion of its funds to which a shareholder has a distinct right, as, for instance, a dividend, he may, in an action, recover the amount misapplied; and when such misapplication has not been effected, but is threatened, he may, by bill in equity for an injunction, prevent it.

3. When a corporation or its rights of property are threatened with an injury of such a nature as the court will enjoin, but it refuses to take any legal steps to protect itself, a stockholder may maintain a bill in equity against the party threatening the mischief and the corporation, to restrain by injunction the commission of the act, in order thereby to protect his interest from immediate damage.

But no case is cited, nor does any dictum in the opinion of the court go to the length of asserting, that when a corporation has been injured by a tort or a breach of a contract, or has any right of action, legal or equitable, against a party, an individual shareholder can come into court and prosecute that cause of action, because the corporation fails or refuses to do so. The court cites with approbation the following language from Ang. & A. Corp. § 393: "Although the result of the authorities clearly is, that in a corporation, acting within the scope of, and in obedience to, the provisions of its constitution, the will of the majority, duly expressed at a legally constituted meeting, must govern, yet, beyond the limits of the act of incorporation, the will of the majority cannot make an act valid; and the powers

of a court of equity may be put in motion, at the instance of a single shareholder. if he can show that the corporation are employing their statutory powers for the accomplishment of purposes not within the scope of their institution. Yet, it is to be observed, that there is an important distinction between this class of cases and those in which there is no breach of trust, but only error and misapprehension, or simple negligence on the part of the directors." And the court says that we have here the rule and its limitations. In the case before us, we have not attempted to transcend the powers of the corporation, nor any breach of trust on the part of the directors, but simply a neglect to bring a suit ·which one of the stockholders thinks should be brought.

Again, the court says, that the jurisdiction at the instance of a shareholder is to apply preventive remedies. by injunction. to restrain those who administer the affairs of the corporation from doing acts which would amount to a violation of the charter. etc. It also extends to inquiring concerning, and enjoining, as the case may require, individuals, in whatever character they may assume to act, from prosecuting any course of conduct which is in violation of a corporate franchise, or in denial of a right growing out of it, when, for the injury which will result, there is no adequate remedy at law. We see here, that where other parties are concerned, the jurisdiction is limited to cases in which preventive remedies are efficient for the protection of rights endangered by the neglect of the directors and the threatened aggressions of others. It would be a doctrine attended with very serious consequences if every individual shareholder, assuming the place of the corporation, could decide for it when actions should be brought to vindicate its supposed right. Each one of the shareholders might elect to claim a remedy, and resort to a tribunal different from those chosen by every other, and use the court of equity to enforce his views, regardless of its duly constituted officers and of all other parties having interests, rights, and powers equal to his own. In such a struggle, the real interests of the corporation might be entirely sacrificed. If such a doctrine should obtain, it would be dangerous to deal with a corporation, for whatever the understanding had with its lawful representatives, no one could be protected from the individual shareholders.

If a stockholder is aggrieved by the refusal of the board of directors to accept his views. his remedy is to unite with other stockholders and change those directors. But if irreparable mischief to his interests may ensue in the meantime, equity will administer preventive justice until such time as the will of the body of stockholders can be ascertained.

The express company not being a party to this proceeding, will be at liberty to assert any claim it may think proper, growing out of these transactions, and is manifestly the proper party to do so, if it is to be done at all. The plaintiffs' bill is dismissed with costs. Bill dismissed with costs.