PETREL GUANO Co. and others *v.* JARNETTE and others.

*(Circuit Court, E. D. North Carolina.* November Term, 1885 )

1. SHIPPING LAWS—TRANSPORTATION BY FOREIGN VESSELS BETWEEN AMERICAN PORTS.

Section 4347, Rev. St. United States, forbidding the transportation of merchandise in foreign bottoms from one port of the United States to another port of the United States, and imposing a forfeiture of cargo as penalty for such transportation, means, by the word "port," any place from which merchandise may be shipped.

2. SAME—REMISSION OF PENALTY—MODE PRESCRIBED.

The forfeiture of cargo imposed as penalty under Rev. St. United States, § 4347, can only be remitted under the mode prescribed in Rev. St. United States, § 5229, which requires a petition to the district judge, a summary inquiry by him into the circumstances, and a transmission of the facts to the secretary of the treasury.

3. SAME—ILLEGAL CONTRACT—ILLEGALITY RENDERS CONTRACT VOID.

The illegality of a contract, and not the penal tax and forfeiture imposed as penalties under the law which declares the illegality, makes the contract void.

4. SAME—EXECUTION OF ILLEGAL CONTRACT—EFFECT AS TO FREIGHT.

A foreign vessel contracting to carry merchandise in violation of the prohibition contained in section 4347, Rev. St. United States, earns no freight by executing the contract.

5. SAME—ILLEGAL CONTRACT—EFFECT OF REMISSION OF PENALTY.

No remission of a forfeiture imposed under a statute legalizes a contract illegal under that law.

6. EQUITY—PENALTIES AGAINST WHICH IT RELIEVES.

The penalties against which equity relieves are those imposed by contract, and not those imposed by law.

In Equity.

*Russell & Ricaud,* for plaintiffs.

*J. D. Bellamy* and *A. G. McGrath,* for defendants.

SEYMOUR, J. This is a suit in equity, brought by partners resident in New York against a member of the firm resident in North Carolina, to recover partnership assets; and the main subject of the controversy has been the disposition of three cargoes of guano shipped by the defendant Jarnette from the island of Roncados in the Caribbean sea to Wilmington. Jarnette was the agent of the copartnership, as well as a member of the firm, and was in charge of the partnership operations on the island of Roncados. The plaintiffs furnished the money capital, agreed to send shipping to Roncados for

the guano, and employed an agent other than Jarnette to attend to the shipments, which were to be made to New York or Philadelphia. It is averred by the plaintiffs that, in violation of the written contract between the copartners, and for the purpose of defrauding them, the partner who is made a defendant shipped the guano to Wilmington to his own order, with the purpose of disposing of the same and defrauding them; and collusion and the manufacture of false and fraudulent charges for advances are charged against the other defendants. The defendant, on the other hand, replies that he was abandoned by his copartners; left, with his laborers, without supplies, on a desert island; compelled to risk his life in a long sea voyage in an open boat to Aspinwall, the nearest port; and that his acts which were not in pursuance of the contract were rendered necessary by the conduct of the plaintiffs and the exigencies of his position. The other defendants have answered, denying the fraud and combination, of which indeed no proof was offered. All the questions arising in the case have been decided by an interlocutory opinion rendered by the court, and a settlement of the matters in dispute founded thereon, excepting one, viz., the claim of the defendant, master of the British vessel, the Iolanthe, for freight. This is resisted by the plaintiffs on the ground that Roncados is an island belonging to the United States, and within the provision of its coasting laws, and that it was illegal to ship goods therefrom to any other port in this country. The necessary consequence of the illegality of such shipment is, it is claimed, that no freight was earned by the Iolanthe.

The island of Roncados is one of what are known as the "Guano Islands" of the United States. By section 5575 of the Revised Statutes it is enacted that "the introduction of guano from such islands" "shall be regulated as is the coasting trade between different parts of the United States, and the same law shall govern the vessel concerned therein." The policy of the United States, as developed in its statutory regulation of the coasting trade, is to entirely exclude the use of foreign bottoms from such employment. By the Revised Statutes (section 4219) a duty of 50 cents a ton is imposed on a vessel, not of the United States, which shall be entered in one district from another, having on board merchandise taken in one district to be delivered in another. This duty is called by the assistant secretary of the treasury, in his communication to the collector of the port of Wilmington, in the case of *The Iolanthe*, a penal duty, and its amount shows that it is intended to be prohibitory. The Revised Statutes (section 4311) enacts that "vessels enrolled, and having a license in force, and no others, shall be entitled to the privilege of vessels employed in the coasting trade." Section 4131 enacts that vessels registered pursuant to law, and no others except such as shall be duly qualified according to law, shall be deemed vessels of the United States; and section 4132, that vessels built within the United States (or captured, etc.) and belonging wholly to citizens thereof, "and no

others, may be registered." Section 4347 enacts "that no merchandise shall be transported, under penalty of forfeiture thereof, from one port of the United States to another port of the United States, in a vessel belonging wholly or in part to a subject of any foreign power; but this section shall not be construed to prohibit the sailing of any foreign vessel from one to another port of the United States: *provided, that no merchandise other than that imported in such vessel from some foreign port shall be carried from one port or place to another in the United States.*"

It has been suggested that the island of Roncados is not a port, and therefore does not come within the penalty imposed. I do not know whether the island contains any "haven" or "place where vessels may safely ride at anchor." It is certain that it has no port of entry. But the word "port" in the section evidently means any place from which merchandise may be shipped. Such is the statutory construction given to the word in Rev. St. § 2767, and in section 4347 it is used as an alternative word for "place." Any other construction of the word would defeat the evident intent of the statute, besides putting a narrow and forced interpretation upon it. But whatever might be said upon this point is unnecessary. The penalty imposed is only evidence that the act of shipping in a foreign bottom is forbidden. The fact that the statute forbids such act, and not the penalty imposed, makes the contract illegal. That the statute of the United States does forbid it is evident.

The conclusion reached, then, is this: The contract to carry the guano from Roncados to Wilmington, two places in the United States, in a foreign vessel, entered into between the master of the Iolanthe and the defendant Jarnette, was illegal; and, being illegal, no freight was earned by the Iolanthe. It is not deemed necessary to multiply authorities in support of a proposition so well understood. The general rule is laid down by Holt, C. J.:

"Every contract made for or about any matter or thing which is prohibited and made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty on the offender; because the penalty implies a prohibition." *Bartlett* v. *Venor,* Carth. 252.

In *Smith* v. *Mawhood,* 14 Mees. & W. 452, Parke, B., says that if the legislature intend to prohibit any contract, the contract will be illegal and void.

"The universal law of illegal contracts, which declares them void, and permits no valid claim to grow out of them or rest upon them, applies to the contract for freight. It follows that no freight can be earned by an illegal voyage." 1 Pars. Marit. Law, 225. The court of king's bench gives the definition of freight:

"Freight is the reward which the law entitles a plaintiff to recover for bringing goods lawfully into the country upon a legal voyage." *Muller* v. *Gernon,* 3 Taunt. 394.

Conceding the general rule, and making no controversy over the illegality of the voyage, or the proposition that it was within section

4347 of the Revised Statutes, the learned counsel who appeared for the petitioner on the rehearing, contended that the court should allow the petitioner his freight for two reasons: *First*, because the government had remitted the forfeiture; and, *second*, because this is a cause in equity, and a court of equity will not give the plaintiff the cargo, and deprive the petitioner of his possession and common-law lien, without compelling the former to do equity, by paying the charges for freight.

The only evidence offered on the first point is a letter from the assistant secretary of the treasury, reciting a telegram of the thirty-first of March, ult., by which the collector at Wilmington is directed to "allow British schoner Iolanthe to make entry as from a foreign port, abstain from exacting penal tax, and abandon proceedings for forfeiture of cargo." This does not amount to or profess to be a remission of the forfeiture. The mode of remitting such a forfeiture is prescribed in section 5292 of the Revised Statutes, which requires a petition to the district judge, a summary inquiry by him into the circumstances, and a transmission of the facts to the secretary of the treasury. But no remission of the forfeiture would have the effect of legalizing the illegal contract. No freight was earned by the Iolanthe; and no pardon or waiver of the penalty incurred, by way of penal tax (Rev. St. § 4219) or forfeiture, can make that good which was void in its inception. If authority were needed on the point, the cases of *Muller* v. *Gernon* 3 Taunt. 394, and *Blanck* v. *Solly*, 8 Taunt. 89, are in point.

The proposition that the forfeiture was only for the government, and if that be waived the parties to the contract cannot make the defense, is unsound in putting the case upon the forfeiture, which is but an indication or proof that the act was forbidden. The contract to ship in a foreign bottom was to do a thing forbidden by law. The penal tax and forfeiture are imposed as penalties for the illegality; but it is not the penalty, but the illegality, which makes the contract void, and a remission of the punishment cannot affect the contract which is made void by the law itself.

Upon the second point: the penalties against which equity relieves are those existing by contract, not those, like the one in controversy, created by law. The latter, no court can relieve against. "Where any penalty or forfeiture is imposed by statute upon the doing or omission of a certain act, there courts of equity will not interfere to mitigate the penalty or forfeiture incurred, for that would be a contravention of the direct expression of the legislative will." 2 Story, Eq. § 1326. The true rule is that where a contract sought to be enforced springs out of a violation of statute, the court will leave the parties where it finds them, withholding its aid from both. *Seneca Co. Bank* v. *Lamb*, 26 Barb. 595. If it is urged that a court of equity will leave the possession of the guano where it is, and refuse to give it to the plaintiffs unless they pay the freight, the answer is: The

court cannot require the enforcement of an illegal contract; it cannot, on that account, refuse to take jurisdiction of the action, which is one for the settlement of a partnership business. Upon taking such jurisdiction, the claim of the Iolanthe comes before the court simply as ancillary to the main equity. The only course open to the court would be to require the freight to be paid, which it cannot do, or to dismiss this branch of the case; thereby sending the plaintiffs to an action at law, in which they could certainly recover the cargo without paying freight. This would be to violate the principle always acted upon by courts of equity, of taking the administration of all matters that arise incidentally in the course of a case properly before it, so as to avoid the multiplication of suits. In this case, great inconvenience, delay, and costs would result from sending to a court of law the question of the possession of this cargo. No equitable element exists in the controversy between the master of the Iolanthe and the plaintiffs. It is a pure question of law, and this court, in deciding it, must decide as a court of law would.

As he made his motion in this suit, it was understood that the master of the Iolanthe desired to have his claim decided here. As matter of fact he has had the advantage of the allowance of a part of it. Technically, the motion, which is one for the allowance of not only his advances, but of his freight, puts the Iolanthe in the attitude of one asking active intervention by the court; but I prefer to put the matter upon its real merits. The motion is denied.