Harris, J.
 

 The contract made between Viger, Dewitt & Co. and Albert Brisbane, on the 7th of March, 1837, was illegal and void, not because it contemplated a violation of the statute of this state prohibiting the circulation of small bills, for the contract has no reference to the denomination of bills to be issued, nor does it appear that in fact this statute was ever violated by putting in circulation any bills under the denomination of $5, but the contract was illegal for the reason that its execution necessarily involved a violation of the restraining act of this state. Viger, Dewitt & Co. were an unincorporated banking association at Montreal. They agreed with Brisbane that they would furnish him with their bank notes, and he was to employ the notes so furnished in the discounting of notes and the exchange business at Buffalo. The notes were to be loaned and put in circulation in this state as money. Such a transaction was expressly prohibited by law. (1 It.
 
 S.,
 
 712, § 6.)
 

 Albert Brisbane, on his part, executed a bond to Viger, Dewitt & Co., conditioned to repay the amounts which from time to time might be advanced to him in pursuance of this agreement. At the same time and as a part of the same transaction, and to secure the performance of the condition of the bond executed by Albert Brisbane, James Brisbane assigned to Viger, Dewitt
 
 &
 
 Co. a bond and mortgage which he then held against Albert, and upon which there was then due $37,500. The business contemplated by the agreement of the seventh of March having been closed, a settlement took place on the 23d of September, 1840, at
 
 *504
 
 which there was found due to Viger, Dewitt & Co., for advances made by them to Albert Brisbane, a balance of $11,232. The plaintiff, as assignee, now seeks to enforce the collection of this balance by a foreclosure of the mortgage assigned to Viger, Dewitt
 
 &
 
 Co. by James Brisbane.
 

 The familiar and well settled rule of law applicable to cases of this description is, that the court will not interfere to grant relief to either party, No court will lend its aid to a man who founds his action upon an illegal contract. It says to him that, even though he suffer injustice at the hands of the defendant, he has no right to invoke the assistance of the court, for he himself has transgressed the lav The rule is kindred to that which refuses compensation to -< party for an injury resulting from the negligence of another when he has himself been guilty of negligence. In both cases the law leaves the parties in the condition in which they have placed themselves. It will not attempt to measure the degree of guilt with which, as between themselves, they may be chargeable. It is true, as was said by Lord Mansfield, in
 
 Holman
 
 v.
 
 Johnson (Cowp.,
 
 341), that the objection, that the contract was illegal as between the parties, “sounds very ill in the mouth of a defendant.” And yet, upon the ground that public policy requires it, the court steadfastly adheres to the rule of non-interference; even where the contract has been fully executed by the plaintiff, so that the defendant has the full benefit of it, and it remains wholly unexecuted on the part of the defendant.
 

 I think the referee who first decided this case, as well as the court which affirmed his decision, while recognizing the integrity of this rule, have failed in its application. The assignment and delivery of the bond and mortgage formed a part of the illegal transaction. This is undeniable. The assignees thus became entitled to all the benefit which they could derive from what had been done, without calling upon the court for assistance. If they could have induced tne mortgagor voluntarily to pay the amount due them, no
 
 *505
 
 court would have aided the mortgagee or his representatives to recover back the money thus received. The answer then would have been, as it is now, “ both parties are in fault. They intended to violate the law, and, therefore,
 
 ‘potior cst conditio
 
 defcndentis.’ ” Albert Brisbane agreed with Viger, Dewitt & Co. to refund the money they should advance to him. James Brisbane, the better to assure them that Albert would do as he had agreed, placed in their hands the bond and mortgage. Albert having failed to keep his engagements, the plaintiff asks the court to aid him in the collection of the amount due from Albert by a sale of the mortgaged premises. The answer to this application, as before, is,
 
 “
 
 the transaction was illegal. ‘
 
 Potior est conditio defcndentis.''
 

 Nor is the right to take this objection confined to the parties to the illegal transaction. A third person, whose obligation, valid in its inception, and against which, in the hands of a legal holder, he could have no available defence, may defend himself on the ground of the illegality of the transaction through which the plaintiff derives title. Thus, in
 
 Johnson
 
 v.
 
 Bush
 
 (3
 
 Barb. Ch. R.,
 
 207), a bill was filed to foreclose a mortgage executed by Bush to the Globe Fire Insurance Company, and which, in the hands of that corporation, was a valid security; but it had been assigned to the plaintiff contrary to law. It was insisted by the plaintiff’s counsel, as the court below have decided in this case, that, though the assignment had been made under an illegal contract, yet, having been fully executed and delivered, its effect was to vest in the plaintiff a complete title to the mortgage; but it was held that, as the assignment was made in violation of a statutory provision on the subject, the plaintiff had acquired no legal or equitable right to the mortgage. So, in
 
 Talmage
 
 v.
 
 Pell
 
 (3
 
 Seld.,
 
 328), the commissioners of the canal fund of the State of Ohio sought to enforce a valid mortgage which had been assigned to them to secure the performance of an illegal contract. It was urged there, as it
 
 *506
 
 has been held here, that the assignment, although illegal, was an executed contract; but it was decided by this court that, as the assignment was made to secure the performance of a contract which was void for illegality, the assignment also was void.
 
 Green
 
 v.
 
 Seymour
 
 (3
 
 Sandf. Ch. R.,
 
 285) is to the same effect. So also is
 
 Leavitt
 
 v.
 
 Palmer
 
 (3
 
 Comst.,
 
 19). In the latter case, Bronson, J., in delivering the opinion of the court, said: “The transaction amounted to this, neither more nor less: there was a promise, which, though founded on a good consideration, was forbidden by law, and therefore void, and an assignment of property in trust to secure the performance of the illegal promise. Such a trust cannot be supported.”
 
 (Adams
 
 v.
 
 Rowan,
 
 8
 
 Sme. & Mar.,
 
 624;
 
 Story on Prom. Notes,
 
 § 193.)
 

 It was urged upon the argument that, as the contract was made in a foreign country, and Viger, Dewitt & Co. were themselves foreigners, they ought not, in the absence of proof of actual knowledge, to be held chargeable with such knowledge, and therefore the parties are not to be regarded as
 
 in pari delicto.
 
 This might have been true, if the contract, being made in another country, was also to have been performed there. But the contract was to be performed in this state, and, in that case, the parties must be presumed to know the laws of the state where they propose to carry their agreement into effect. There cannot be one rule of law for the citizen and another for the foreigner in reference to the same transaction.
 
 (Merchants’ Bank
 
 v.
 
 Spalding,
 
 5
 
 Seld.,
 
 53;
 
 Hyde
 
 V.
 
 Goodnow,
 
 3
 
 Comst.,
 
 266.)
 

 My conclusion is, that the assignment in question cannot be saved from the fate of the principal contract between the parties. They agreed to engage in a business expressly prohibited by statute. The assignment was executed as a part of one and the same transaction. Its object was to secure to one of the parties ultimate payment for the notes to be issued and put in circulation in pursuance of the illegal con
 
 *507
 
 tract. I can see no principle which would uphold the one when the other falls.
 

 The judgment of the Supreme Court should be reversed and a new trial granted, with costs to abide the event.
 

 All the judges concurring,
 

 Judgment reversed and new trial ordered.