GEORGE BRISBANE, Respondent, v WELCOME R. BEEBE, Appellant.

Where A. loans his note to B., upon the strength of C.'s promise that he will get it discounted and renewed from time to time until B., shall be able to meet it, C. is bound by the promise and A. can maintain an action against him thereon.   But such a promise carries with it an implication, both that A.'s note shall be furnished for renewal before the one discounted becomes due, in season to be substituted therefor, so as to save C.'s indorsement from dishonor, and that in the event of B.'s ability to pay the note when due the obligation to procure a renewal shall cease.   The neglect of B. to furnish a new note in time for renewal, or the ability of B. to pay, discharges C. from liability.

(Argued January 10, 1872 ; decided May term, 1872.)

APPEAL from the judgment of the General Term of the Supreme Court in the eighth judicial district, in favor of plaintiff, entered upon an order denying motion for a new trial and directing judgment upon the verdict, provided plaintiff stipulates to make a deduction therefrom.

On the trial it appeared that, shortly prior to June 22, 1860, one Charles E. Birdsall applied to the defendant for a loan of $500, which the defendant declined to make, but on that day addressed to the wife of Birdsall a note, in which he stated that if she or her husband would bring him the plaintiff's note for that sum, he would get it discounted for her husband's benefit from time to time till her husband was able to meet it; upon the strength of this promise by the defendant, the plaintiff made his note for the amount stated, payable to the order of Mrs. Birdsall, who took it to the defendant, who indorsed and procured it to be discounted ; when this note

became due Birdsall was perfectly able to pay it, but did not, nor did any one furnish to the defendant a note with which to renew it, and it was protested and charged to the defendant's account. Some days afterward, Mrs. Birdsall went to the defendant with a second note made by the plaintiff, payable to the defendant's order, and prevailed upon him to take it and try to get it discounted. On that occasion the defendant took up and returned to Mrs. Birdsall the plaintiff's first note, and, failing to get the second discounted, he carried it until it matured. No note being furnished with which to renew it, it was protested and left for collection. As to the ability of Birdsall then to pay, nothing appeared, except that it was inconvenient for him to do so. Some days subsequent to the maturity of the second note Birdsall called upon the defendant, with the plaintiff's third note for the same amount, which, at Birdsall's solicitation, he took and gave up the second note, and failing to get the third note discounted, he transferred to a party to whom he was indebted. When this note became due Birdsall was pecuniarily responsible and able to pay it; he testified he would have done so if he had been able to attend to business. After the third note had laid under protest some time, Birdsall called upon the defendant with the plaintiff's fourth note for the same amount; solicited him to raise money upon it and take up the third note. This the defendant made an effort to do, but, failing to get it discounted, erased his indorsement from it and returned it to Birdsall. The plaintiff proved that he was prosecuted by the holder of the third note, and a recovery had against him for $519, the amount and interest due upon it, and $116 costs; and, to repel the evidence of Birdsall's ability to pay the note, testified, as a witness in his own behalf, that Birdsall was not worth a dollar, but, upon cross-examination, admitted that he knew nothing about Birdsall's pecuniary responsibility, except what he had heard Birdsall's wife say. Upon this evidence the defendant moved, upon numerous grounds, that the complaint be dismissed, two of which were, in substance, that no note of the plaintiff had

been furnished the defendant with which to renew a previous one until the previous note had been dishonored; and second, that the event had occurred when the note sued upon became due, up to and until which he had agreed to get the note renewed, viz., the ability of Birdsall to meet it. The motion was overruled. The defendant excepted, and thereupon the court charged the jury that the plaintiff was entitled to recover the $519 damages and $116.03 costs and interest, to which the defendant also excepted. The jury rendered a verdict in accordance with the charge for $812.05. The case and exceptions were ordered to be heard at General Term, and were so heard. Judgment was ordered upon the verdict, provided the plaintiff would deduct therefrom the $116.03 costs, which, being deducted, judgment was entered accordingly.

*E. Cooke* for the appellant.

*A. N. Weller* for the respondent. The letter of defendant constituted a valid contract. (*Judson* v. *Gray*, 17 How., 289, 298; *Lawrence* v. *Fox*, 20 N. Y., 268; *Baker* v. *Bucklin*, 2 Denio, 45; 15 Abbott's, 280; Story on Cont., §§ 431–433; *Miller* v. *Drake*, 1 Cow., 45.) In interpreting contracts, the court may look at the surrounding circumstances and the pre-existing relations between the parties. (*Blossom* v. *Griffin*, 13 N. Y., 569; *Connell* v. *Taylor*, Seld., note 2, p. 23; *Hasbrook* v. *Paddock*, 1 Barb., 635; *Auburn City Bank* v. *Leonard*, 40 id., 119; *Bankcroft* v. *Winspear*, 44 id., 209.) The literal or grammatical sense is not to be adhered to, either in will or deed, when a contrary intent is apparent. (*White* v. *Barber*, 5 Burr., 2702; *Northrop* v. *R. P. Ins. Co.*, 43 N. Y.; *Jackson* v. *Blanchard*, 6 John., 54; *Jackson* v. *Topping*, 1 Wend., 388; *Roome* v. *Phillips*, 24 N. Y., 463; Cro. Eliz., 525, and Moore, 422; *Pond* v. *Berg*, 10 Paige, 46; *Barker* v. *Sureties*, 2 Str., 1175; *Fairfield* v. *Morgan*, 5 Bos. & Pul., 38; *People* v. *Utica Ins. Co.*, 15 John., 381; *Du Bois* v. *Ray*, 35 N. Y., 162.) In *Decker* v. *Furniss* (3

Duer., 309), the court say: ."The real intent of the parties is not to be sacrificed to the literal interpretation of the words that may happen to be used." (See, also, 5 Duer, 336.) "Intention must govern." (*Mason* v. *Jones*, 2 Barb., 229; *Heard* v. *Case*, 23 How., 546; 1 Paige, 331; 3 id., 9.) When defendant failed to get the note discounted it became void, and should have been returned; the transferring it in payment of an antecedent debt was a fraud, for which defendant is liable. (*Kasson* v. *Smith*, 8 Wend., 437; *Murray* v. *Burleigh*, 10 John., 172; 5 Wend., 566; *Rochester* v. *Taylor*, 23 Barb., 18; 3 Wend., 415; *Decker* v. *Mathews*, 12 N. Y., 313, *et seq*; *Dunniston* v. *Bacon*, 10 John., 198.)

GRAY, C. The agreement of the defendant to see that the plaintiff's note was renewed from time to time till Birdsall should be able to meet it, carried with it an implication, not only that the plaintiff's note for renewal should be furnished in season to be substituted for the previous note, in order to save it, with the defendant's indorsement, from dishonor, but an implication that, in the event of Birdsall's ability to meet, or, in other words, pay the note, the obligation of the defendant to procure a renewal should cease. It is quite clear that after the dishonor of the first note, the defendant was not bound to see to it that a second was discounted or substituted for it; when the second note became due it was paid by the defendant; he, therefore, as between him and the plaintiff, had the right to the avails of the note given as its substitute (the second being canceled), to pay it to whomsoever he pleased, or to procure it to be discounted by a bank or his creditor. Transferring it to a creditor in payment of a debt was the equivalent, and nothing more or less than procuring it to be discounted by the creditor to whom it was transferred, and the most the defendant was bound to do in the event of Birdsall's being unable to pay it, was, if a new note was seasonably furnished, to see to it that the note discounted by his creditor was renewed, or that he should himself discount the note offered as its substitute; no

such note was seasonably presented, and hence the defendant's obligation to procure it to be discounted, or discount it himself, was at an end. But upon the other ground, the action was well defended; Birdsall was able to pay the note, at its maturity, upon which the plaintiff was sued; the statement of the plaintiff that Birdsall was not worth a dollar, was made without knowledge sufficient to justify it, as he admitted on his cross-examination, when he said he knew nothing about his pecuniary responsibility except what Birdsall's wife had told him.

The judgment appealed from should be reversed.

LEONARD, C. There is nothing in the defendant's letter of October 22d, 1860, which justifies the assumption by the court that he intended to make any agreement with the plaintiff, or authorized or expected it to be shown to him. It appears to be a friendly, personal and confidential letter from the defendant to a near relative—the wife of his nephew. Nor does the evidence justify the assumption made by the court that the letter of the defendant could be construed as an engagement with the plaintiff.

The evidence of the plaintiff, that Mrs. Birdsall had told him that the defendant had authorized her to show the letter to him, was of no consequence. It was hearsay, merely. That of Mr. Weller, that the defendant told him he had given the letter to Mrs. Birdsall to be given by her to the plaintiff, was flatly contradicted by the defendant. It became, then, under the most favorable aspect of the case for the plaintiff, a question of fact for the jury. If the defendant authorized the letter to be shown to the plaintiff, I think there would then be no doubt that it might be considered as an agreement with him.

The case of *Scott* v. *Pilkington* (15 Abb. Pr. R., 280) would then be an authority in point. The referee in that case found that the letter of the defendant was written for the purpose and with the intention that it should be exhibited to the plaintiff. The General Term affirmed the judgment

expressly upon the fact so found. That was the fact which bound the defendant as upon a promise to the plaintiff.

The other cases relied on by the plaintiff (*Judson* v. *Gray*, 17 How. Pr. R., 289 ; *Lawrence* v. *Fox*, 20 N. Y., 268 ; *Barker* v. *Bucklin*, 2 Denio, 45) have no application in principle to the case presented here. Those cases are express promises by the defendant to pay his own debt, on a consideration proceeding from a third party to the plaintiff.

The court, in the present case, considered the letter as an undertaking by the defendant with the plaintiff, and refused to hold with the second request of the defendant, that the plaintiff had no right of action on the instrument declared on, but instructed the jury that the plaintiff was entitled to recover as matter of law. The defendant's exceptions to these rulings were well taken.

I think, also, that it was a part of his case for the plaintiff to prove that Mr. Birdsall was unable to pay, and that it was error to refuse the sixth request of the defendant, relating to that subject. There was affirmative evidence that he was able to pay, and none of a legal character to the contrary.

In my opinion, too, the plaintiff was required, by the terms of the letter, if it be considered that a case was made of a probable intention on the part of the defendant to contract with the plaintiff, to furnish the defendant with a renewal note before the former one became due.

The judgment should be reversed and a new trial ordered, with costs to abide the event.