THE NEW YORK TRUST AND LOAN COMPANY, Respond-
ent, v. JOSEPH W. HELMER, Impleaded with CHAUNCEY
T. BOWEN, Appellant.

## THE SAME v. THE SAME.

*Promissory note — agreement to renew — what allegation of, in answer sufficient —*
*Banking business — what constitutes — who may set up invalidity of transaction.*

This action was brought upon two promissory notes, payable six months after
date. The answer alleged that the notes were made to raise money ; that, at
the time they were delivered to the plaintiff, it was agreed between the plain-
tiff and defendants, for a valuable consideration, that the defendants should
retain, and pay interest upon the proceeds of the notes for the six months
next following the maturity thereof, and should give new notes therefor; that
they had tendered the new notes, and the plaintiff had refused to accept the
same. *Held*, that it was to be presumed, from the allegation, that the agree-
ment to renew was in writing, and that the answer set up a good defense to
the action.

The plaintiff was a corporation created under a special act, by which it was
authorized, among other things, "to grant, bargain, sell, buy or receive all
kinds of property, real, personal or mixed, or to hold the same in trust or
otherwise; * * * and to advance moneys * * * upon any property, real
or personal, on such terms or commissions as may be established or approved
by the directors."

The answer alleged that the plaintiff was engaged in the business of discounting
commercial paper; and crediting the proceeds in the accounts, and subject to
the checks of its customers; that the notes in question were made to raise
money upon, and were received and discounted in the course of that business
by the plaintiff, and the proceeds placed in the account of the defendant
Bowen. Upon appeal from a judgment entered upon an order sustaining a
demurrer to the answer, on the ground that it did not state facts sufficient to
constitute a defense, *held*, that the acts of discounting commercial paper, for
the purpose of raising money, and placing the proceeds to the credit, and sub-
ject to the checks of its customers, constituted the business of banking, within
the meaning of section 4 of title 3 of chapter 8 of part 2 of the Revised
Statutes, prohibiting any corporation not expressly incorporated for banking
purposes from carrying on that business.

That the charter of the plaintiff did not authorize it to carry on that business.

That even if it did, it was in violation of section 4 of article 8 of the Constitution,
declaring that the legislature shall have no power to pass any act granting any
*special* charter for banking purposes.

That the defendants were not estopped from setting up the invalidity of the
notes, as the transaction was one expressly forbidden by the laws of the State.

Appeals by the defendant Helmer, in two actions, from orders made at the Special Term sustaining demurrers to answers, and from the judgments afterwards entered thereon.

*Geo. Bowen,* for the appellants. The only authority by which plaintiff can claim to be able to discount these notes is by virtue of the following words : " Shall have power, etc., to, etc., buy or receive all kinds of property, real, personal or mixed." This only authorizes it to buy or receive something then having existence — property. It does not authorize it to breathe the breath of life into, to create property ; and, until after the buying or receiving process has been fully complete, these notes were nothing, and there was nothing about which the parties could negotiate, or upon which the plaintiff could place its hands to receive. This body corporate can only act in the mode, and for the purpose, prescribed by the law creating it. (*Beatty* v. *The Marine Ins. Co.,* 2 Johns., 110, see 114 ; *Jackson* v. *Hartwell,* 8 id., 422, see 424 ; *N. Y. F. Ins. Co.* v. *Ely,* 2 Cow., 664, see 669 ; *The People* v. *Utica Ins. Co.,* 15 Johns., 383.) There is a plain distinction between purchasing or receiving, within the meaning of the charter of the plaintiff, and discounting, which was the method by which the plaintiff got the notes. What is a discount ? (*Am. L. I. and T. Co.* v. *Dobbin,* Sup. to Hill & Denio, 251 ; 1 Hilt., 98 ; *City Bk. of Columbus* v. *Bruce & Fox,* 17 N. Y., 507, 515.) The discounting of a note is the loan of money thereon, which, in the hands of the holder, must, or may previously, have had no vitality, while the purchase must be of a note valid in the hands of the holder at the time ; so that the same elements must exist in the note to give the power to "*receive*" as to "*purchase,*" all of which are wanting in our case. (Cases above cited ; *Utica Ins. Co.* v. *Scott,* 19 Johns., 1 ; *Talmage* v. *Pell,* 3 Seld., 328 ; *Leavitt* v. *Palmer,* 3 Comst., 19 32, 33 ; *The People* v. *The Utica Ins. Co.,* 15 Johns., 358 ; *Curtis et al.* v. *Leavitt,* 15 N. Y., 58 ; *N. Y. F. Ins. Co.* v. *Ely,* 2 Cow., 678 ; *Utica Ins. Co.* v. *Cadwell,* 3 Wend., 300, 369 ; *Bissell* v. *The Mich. S. and N. I. R. Co.,* 22 N. Y., 259 ; *Beach* v. *Fulton Bk.,* 3 Wend., 582, 583 ; *In re John M. Jaycox and John A. Green, Bankrupts,* in Circuit Court of U. S., N. Dist. of N. Y., opin. of court, p. 5, fol. 18 ; *Lucas et al.* v. *The Goot Nat. Bk. of Pottsville,* decided Oct. 11, 1875, N. Y. Weekly Dig., 499 ; Abbott's

Digest, Law of Corporations, 56, 57, etc.; *The Utica Ins. Co.* v. *Hunt & Brooks*, 1 Wend., 56; *De Groot* v. *Van Duzer*, 20 id., 390; *Bk. of California* v. *Collins*, 7 Hun, 336.)

*Henry E. Davies* and *Wm. P. Dixon*, for the respondent. By the charter of the company, it was authorized to buy any personal property, and a promissory note is personal property. The plaintiff being authorized by its charter to buy "promissory notes," was clearly authorized to "discount" such notes, the latter being the equivalent or same thing as the former. It is not a good defense for these defendants, while retaining the fruits of the contract made with this plaintiff, to deny the validity of that contract. (*Palmer* v. *Lawrence*, 3 Sandf. S. C., 170; *McCutchen* v. *The Steamboat Co.*, 13 Penn., 13; *The Chester Glass Co.* v. *Dewey*, 16 Mass., 102; *State of Indiana* v. *Woram*, 6 Hill, 37; *Moss* v. *The Rossie Lead Mining Co.*, 5 id., 137; *The Steam Navigation Co.* v. *Weed et al.*, 19 Barb., 378.) But, supposing that plaintiff's charter did not give them the right, in express terms, to make the contract in question, the contract is *prima facie* valid, and it lies on those who impeach it to make out that it is *ultra vires*. (See Green's Brice's Ultra Vires, 40, 41.) The transaction between the plaintiff and defendants is not in violation of the restraining acts, and is not, on the part of the plaintiff, an exercise of banking powers. (*Utica Ins. Co.* v. *Scott*, 8 Cow., 709, reversing the same case reported in 19 Johns., 1; *People* v. *Brewster*, 4 Wend., 498; *Mott* v. *The U. S. Trust Co.*, 19 Barb., 568; *Hope Mut. Ins. Co.* v. *Taylor*, 2 Robt., 278; *N. Y. Firemen's Ins. Co.* v. *Ely*, 2 Cow., 678; *Parish* v. *Wheeler*, 22 N. Y., 494, 509; *Curtis* v. *Leavitt*, 15 id., 9; *Leavitt* v. *Blatchford*, 17 id., 521.) The right to make loans by way of discount, and to lend upon bills, bonds, notes and mortgages, is conveyed to a savings institution by a clause in the charter conferring power to invest deposits made with it in public stocks or other securities. (10 G. & J. [Md.], 299; *Lee* v. *Alabama L. and T. Co.*, 13 Ala., 579; *Duncan* v. *Md. S. I.*, 10 G. & J., 299; *Gee* v. *Ala. L. Ins. and T. Co.*, 13 Ala., 581.) In an action on a promissory note, a defense of an agreement, contemporaneous with the making of the note, to renew the note at maturity is frivolous, and may be struck out on motion. (*Baily* v. *Lane*, 13 Abb., 359; *Shoe*

*and Leather Bk.* v. *Camp*, 21 How., 443.) So, also, the allegation that plaintiff is not the lawful owner and holder of the note was stricken out as sham, but this allegation is admitted. (*Seely* v. *Engell*, 17 Barb., 530; *Butterfield* v. *McComb*, 22 How., 150.)

DANIELS, J. :

The first of these two actions was brought upon two promissory notes, made by Joseph W. Helmer and Chauncey T. Bowen, for the sum of $8,000 each, payable to their own order, and indorsed by them. One of these notes was dated on the 22d, and the other on the 25th of March, 1875, and both became due in six months after their respective dates. It was alleged in the complaint that they were transferred before they became due for value to the plaintiff. The defendant Helmer answered the complaint. His first and second answers set forth that the plaintiff was a corporation created by an act of the legislature of the State of New York, enacted on the 6th of May, 1870, and that it had engaged in the business of banking in violation of the laws of the State, and discounted the notes in suit in the course of that business. By a third answer it was alleged that the notes were made and indorsed for the purpose of raising money upon them. And that when they were transferred and delivered to the plaintiff, it was agreed by and between the said plaintiff and said defendants, for a good and valuable consideration then and there paid by said defendants to said plaintiff, and then and there passing between them, that said defendants should and would retain the proceeds of said several notes for six months longer, and next following the six months in said notes mentioned, and should and would pay interest thereon to said plaintiff at the rate of seven per cent per annum, and that they should and would give new notes in like manner and form as said notes in said complaint mentioned immediately upon the same becoming due and payable. And that said plaintiff should and would, in consideration thereof, renew said notes in said complaint mentioned, when the same matured for the period of six months next following the six months in said notes in said complaint mentioned. It was also alleged that when the notes mentioned in the complaint became due, the defendants tendered and offered to the plaintiff two other notes, made and indorsed by themselves, and of the like tenor of

the notes mentioned in the complaint, and due in six months thereafter, with interest, in renewal of the notes mentioned in the complaint. The demurrer was general to the three defenses, because the answer did not state facts sufficient to constitute a defense. And it was so held by the Special Term, before which the case was heard and decided.

Without considering for the present the sufficiency of the first and second defenses, which are nearly, if not entirely identical in both actions, the third does seem to constitute a substantial defense. For the facts alleged as its foundation present a valid agreement for the extension of the notes. It was not stated that a verbal agreement merely was made, which would probably be bad, because of its inconsistency with the written terms of the notes. (*Bailey* v. *Lane*, 13 Abb., 354; *Shoe and Leather Bank* v. *Camp*, 21 How., 443; *Bookstaver* v. *Jayne*, 60 N. Y., 146, 150.) But that an agreement for a renewal and extension had for a good consideration been entered into between the parties. And that was equivalent to a direct allegation that it had been made in writing. For, as a rule of pleading, parties are not required in stating the making of an agreement to aver that it was made in writing, even when the writing has been rendered necessary to secure its validity.

The writing is the evidence which the law will require to sustain the allegation. But the party is not obliged to aver its existence, in order to show that a legal agreement has been made. What the Code required was simply a statement of the new matter constituting the defense, in ordinary and concise language. And that was complied with in the statement of this defense, without the further averment that the agreement was made in writing. (*Miller* v. *Drake*, 1 Caines' R., 45; *Elting* v. *Vanderlyn*, 4 Johns., 237; *Livingston* v. *Smith*, 14 How., 490; *Stern* v. *Drinker*, 2 E. D. Smith, 401; *Horner* v. *Wood*, 15 Barb., 371; *Hilliard* v. *Austin*, 17 id., 141.) It has been supposed that *Rann* v. *Hughes* (7 T. R., 346, note) held a different doctrine as to pleas, but the case itself contains nothing warranting even that distinction.

If it did, however, it would be inapplicable to the present system of pleading, which requires no greater particularity in the answer than it does in the complaint. What has been required to constitute good pleading in either, is a statement of the cause of action or

defense in ordinary and concise language. (Code §§ 141, 149.) And under that the statement which would be sufficient in a complaint, would be equally so in an answer. As this portion of the answer was framed, it alleged all the elements of a binding agreement to renew the notes when they became due. And as the renewal notes were properly tendered at that time, the agreement was performed by the defendants. (*Brisbane* v. *Beebe*, 48 N. Y., 631.)

This defense was sufficiently alleged and judgment upon the demurrer to it should have been ordered in favor of the defendants.

The note in the other action was made by the defendant Helmer, to the order of and indorsed by the defendant Bowen.

It was dated on or about the 4th of June, 1875, and was due in four months from that time. To the complaint on that note the answers were substantially the same as the first and second answers in the other action.

The defenses which they interposed were, that long prior to the making of the notes, the plaintiff opened an office in the city of New York, for discounts and deposits, keeping a large number of mercantile and business accounts, and carried on a regular banking business. That it discounted a large number of drafts, bills, promissory notes and other commercial paper, bought and sold exchange, credited deposits and paid them out on the checks of the depositors, charging the checks in their respective accounts, did the ordinary business of a bank of discount and deposit, and used and employed its capital or effects or some part of them in receiving deposits and making discounts.

That the notes set forth in the complaints were made for the purpose of raising money upon them, and were delivered to, and discounted by, the plaintiff while carrying on such business of a bank of discount and deposit, in the usual course of such business, and with a portion of its capital or effects.

It was also further alleged that the proceeds were credited by the plaintiff upon its books to the defendant Bowen, subject to his checks, according to the usual course and custom of bankers. And that, it was alleged, was in contravention of the Constitution and of the laws of the State, by reason of which the notes were claimed to be void in the hands of the plaintiff.

The company was chartered by a special act of the legislature, enacted on the 6th of May, 1870, and its business and powers were defined and declared by the third section of the act. (Vol. 2, Laws of 1870, 1621, chap. 685, § 3.) That section is in the following words : " The said company shall have power to grant, bargain, sell, buy or receive all kinds of property, real, personal or mixed, or to hold the same in trust or otherwise ; to guarantee the payment, punctual performance and collection of promissory notes, bills of exchange, contracts, bonds, accounts, claims, rents, annuities, mortgages, choses in action, evidences of debt and certificates of property or value, and the titles to property, real or personal, upon such terms or commissions as may be established by the directors of said company ; to receive upon storage, deposit or otherwise, merchandise, bullion, specie, plate, stocks, bonds, promissory notes, certificates and evidences of debt, contracts or other property, and to take the management, custody and charge of real and personal estate and property, and to advance moneys, securities and credits upon any property, real or personal, on such terms or commissions as may be established or approved by the directors of said company ; but no rate of interest to exceed seven per cent per annum shall be charged or received by said company in any transaction."

In support of the demurrers, it has been urged that these notes were personal property, and that the plaintiff was authorized to receive and advance money upon them under the provisions empowering it to buy or receive all kinds of property, and to advance moneys, securities or credits upon any property. But even if all that it has been claimed could be done under these provisions be conceded, that will not sustain the plaintiff's demurrers, for the answers do not admit or state that either of the notes was received in either of those modes.

But, on the contrary, they distinctly aver that the plaintiff was engaged in the business of discounting commercial paper, and crediting the proceeds in the accounts and subject to the checks of its customers ; that these notes were made to raise money upon them, and were received and discounted in the course of that business by the plaintiff, and the proceeds placed in the account of the defendant Bowen. The question presented by the answers and demurrers, therefore, is not whether the plaintiff might not lawfully buy and

advance money on promissory notes, but whether it could discount notes made to raise money, by receiving them from the original parties to them before they have had any other inception, and place the proceeds in account, to be paid out on the checks of one of those parties. That is a very different thing from merely buying or advancing money upon promissory notes as property. (*Catlin v. Gunter*, 1 Kernan, 368.) It is carrying on the business of banking, as that term has been ordinarily understood, and as it has been defined by the courts and the legislature. Webster defines the meaning of that term to include the business of establishing a common fund for lending money, discounting notes, issuing bills and receiving deposits, collecting the money on notes deposited, negotiating bills of exchange, etc. And substantially the same definition was, at an early period, given of this term in the charter of the Commercial Bank of Albany. (Laws of 1825, 198, chap. 117, § 1.)

It was then enacted that the institution should possess the necessary powers to carry on the business of banking, " by discounting bills, notes, and other evidences of debt, by receiving deposits," etc. And the restraining laws of the State were framed upon the theory that discounting notes and receiving deposits constitute the transaction of banking business, as the term banking was understood and employed. That is very evident from the provisions of title 3 of chapter 18, part 1 of the Revised Statutes, to which the power of the plaintiff was expressly subordinated. (Vol. 2, Laws of 1870, 1623, 1624, chap. 686, § 9.) By the fourth section of that title, it has been enacted, that :

" § 4. No corporation created or to be created, and not expressly incorporated for banking purposes, shall, by any implication or construction, be deemed to possess the power of discounting bills, notes or other evidences of debt, of receiving deposits, of buying gold and silver, bullion or foreign coins, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt upon loans or for circulation, as money."

The plaintiff was not incorporated to do the business of banking, and for that reason, by the express terms of this provision, which was a direct qualification of its charter, it had no power to discount notes, or receive deposits.

The courts in their decisions had also proceeded upon the same

principle. It was said by SPENCER, J., in the case of *People* v. *Utica Insurance Company* (15 Johns., 357, 390), that the principal attributes of a bank are the right to issue negotiable notes, discount notes, and receive deposits.

And the same thing was held in *Maine Bank* v. *Butts* (9 Mass., 49, 54.) It also received the sanction of the Supreme Court of this State, in the case of *New York Fireman's Insurance Company* v. *Ely* (2 Cowen, 678, 710.) And, as the plaintiff was not, by its charter, expressly incorporated for banking purposes, it could not do the business in the course of which it was alleged to have received the notes in suit.

Beyond that, it could not have been given any such authority by means of its charter, which was a special act passed for the sole purposes of its own incorporation. For, at the time of its enactment, the Constitution of the State declared that "the legislature shall have no power to pass any act *granting any special charter for banking purposes,* but corporations or associations may be formed for such purposes, under general laws." (1 R. S. [5th ed.], 68, art, 8, § 4.) There was no disposition to confer this power upon the plaintiff by means of its charter, and under this provision of the Constitution, which still remains in force, it could not have been done even if the legislature had entertained that design. (Laws of 1874, p. 932, § 4.) An entirely different intention was exhibited by the charter of the plaintiff.

For, by rendering it subject to the general statute of the State already quoted, it was expressly prohibited from carrying on the business in the course of which these notes were received by it. The demurrers interposed to the defendant's answers admitted all the facts properly alleged, and consequently conceded that these notes were received by the plaintiff as they were alleged to have been by the defendants, and the prohibitions of the statute referred to appear to have been violated by those acts. But notwithstanding that violation, it has been urged that the defendants could not hold and enjoy the avails of the notes and still be allowed to repudiate their liability, for payment. And cases have been referred to in which that principle has been applied to transactions appearing to be in excess of corporate authority. But they involved no violation of a plain statutory restraint, as the

transactions now before the court appear to have done. If the position urged upon the consideration of the court should receive its "sanction," the statute whose restraint has been violated would be practically repealed. For it would be held that what the legislature have declared the plaintiff should not do, might safely be carried on under the sanction of the courts. That would render the statute nugatory, which would violate the duty and authority vested in the court and rendered obligatory upon it. The notes could not be discounted and received in plain violation of the terms of the statute of the State, as they were, and still be made the foundation of legal actions, brought for the recovery. (*Fireman's Ins. Co.* v. *Ely*, 2 Cowen, 678; *N. Y. Life Ins. and Trust Co.* v. *Beebe*, 3 Seld., 364; *Seneca County Bank* v. *Lamb*, 26 Barb., 595; *Barton* v. *Port Jackson Plank Road Co.*, 17 id., 397; *Dewitt* v. *Brisbane*, 16 N. Y., 508; *Richie* v. *Ashbury Co.*, 7 Eng. and Irish Appeals, 653.) That also appears to have been the judgment of the legislature upon the effect of this statutory restraint as it was expressed in its legislation concerning foreign corporations. for it was in terms declared that "where, by the laws of this State, any act is forbidden to be done by any corporation, or by any association of individuals, without express authority of law, and such act shall have been done by a foreign corporation, it shall not be authorized to maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made, or entered into, in consideration of such act." (2 R. S. [Edm. ed.], 477, § 2.) While this section applies in terms only to foreign corporations, it is still expressive of the sense of the legislature as to the effect of its legislation upon domestic corporations. And it was evidently enacted in promotion of the purpose to place them all under the same legal disabilities.

Still further provisions have also been made to suppress the business of unauthorized banking. By them it has not only been declared that "no incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed, for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt, to be loaned or put into circulation as money," but beyond that it has been provided that "all notes and other securi·

ties, for the payment of any money, or the delivery of any property, made or given to any such association, institution or company," * * * "to secure the payment of any money loaned, or discounted by any incorporated company or its officers, contrary to the provisions of the third section of this title shall be void." (1 R. S. [Edm. ed.], 661, §§ 3, 5 ; 2 R. S. [6th ed.], 1007.) And they place the invalidity of these notes beyond all possible grounds of controversy. This is plainly the effect of the statutes of the State, and it is affirmed to have been so held by the General Term of the fourth department in deciding the case of *Black River Insurance Company* v. *New York State Loan and Trust Company.*

The policy inducing the imposition of these restraints upon corporations not formed to carry on the business of banking, requires no vindication from this court in the decision of the cases now before it. But it is well known as a part of the history of the times originating them that their object was to prevent the recurrence of a series of corporate usurpations which had deluged the State with illegal issues of mere paper obligations, never probably intended to be, as they certainly never were redeemed, resulting in great derangements to business, and producing numerous cases of financial embarrassment and ruin. (*Attorney-General* v. *Life and Fire Ins. Co.*, 9 Paige, 470 ; Cleaveland's Introduction to Laws of Banking, 29, 33, 38.) These laws have generally secured the objects they were designed to advance, by closing the avenues through which the repetition of preceding abuses was afterwards rendered impracticable, but as it is the duty of courts of justice to enforce and maintain them, even though that may be attended with disaster to corporations violating them, the judgments and orders appealed from in these cases must be reversed, with leave to the plaintiff to withdraw its demurrers in twenty days on payment of costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgments and orders reversed, with leave to plaintiff to withdraw its demurrers in twenty days on payment of costs.