CHARLES F. NICHOLS, Respondent, *v.* THE WEED SEW-ING MACHINE COMPANY, Appellant, Impleaded, etc.

*Taking a mortgage in the name of a third person, to defraud creditors or escape taxation — the validity of the mortgage cannot be attacked by a subsequent incumbrancer.*

This action was brought to foreclose a mortgage given by one Wood to Charles F. Nichols as collateral to a bond for $7,000, which bond provided that the money was to be received by him in trust for Elizabeth B. Nichols, Mary E. Ball and George C. Nichols. Two thousand seven hundred dollars of the $7,000 belonged to Elizabeth, $3,300 to Mary and $1,000 to George.

The bond and mortgage were taken in the name of Charles because Elizabeth and Mary were unwilling to have it taken in the name of George (as he was a stockholder in a company and liable as such on certain of its guarantees), and in order to protect the property of the three persons from any contingent liabilities thereon. Another reason for so taking it was the unwillingness of George C. to have his name appear lest it might subject him to a taxation which he considered unjust. The mortgagor made no defense. A subsequent incumbrancer, by attachment and judgment against the mortgagor, claimed that the mortgage was void because it was intended to hinder, delay and defraud the creditors of George, and for the reason that it was against public policy, as being an attempt to escape taxation.

*Held,* that neither of these defenses could be set up by a subsequent incumbrancer after the mortgagor had waived them by making a default.

*Quære,* as to whether even the mortgagor could have availed himself of them.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

*H. Boardman Smith,* for the appellant.

*A. D. Wales,* for the respondent.

LEARNED, P. J.:

This is an action of foreclosure, against which the Weed Sewing Machine Company, a subsequent incumbrancer, alone defends. Simeon D. Wood is the mortgagor. The money which was loaned to him, $7,000, belonged to three persons, as follows, to Elizabeth B. Nichols $2,700, to Mary E. Ball $3,300, to George C. Nichols $1,000. And the bond given to the mortgagee, Charles F. Nichols,

contained a clause, to the effect that the payment of the principal sum was to be received in trust for Élizabeth B. Nichols, Mary E. Ball and George C. Nichols according to their interest in the loan. The reason why the bond and mortgage were taken in the name of Charles F. Nichols, as found by the referee, was because there were three persons interested in the fund; and Elizabeth and Mary were not willing that it should be in the name of George, because he was a stockholder in some company, under which he was liable on certain guarantees; and he found that the transaction was in plaintiff's name to protect the property of these three persons from contingent liability on these guarantees. Among other reasons why George C. Nichols did not desire the mortgage to be in his name was because it might subject him to a taxation thereon, which he considered unjust. Simeon D. Wood received the money and executed the bond and mortgage, and delivered the same to George C. Nichols, as agent of Charles F. Nichols. Wood has made default in the payment, and makes no defense.

The complaint alleges that the money payable on the bond was to be received by the plaintiff for the benefit of the persons above mentioned, as in the bond described.

The defense, set up by the Weed Sewing Machine Company, the subsequent incumbrancer by attachment and judgment against Wood, is two fold. First, that the mortgage was void, as intended to hinder, delay and defraud the creditors of George C. Nichols. Second, that it was void as against public policy, on the ground that it was made in an attempt to escape taxation.

*First.* As intended to hinder, delay and defraud creditors of George C. Nichols. It is very doubtful whether, on the facts, this bond and mortgage were made with such intent. So far as concerns the $6,000 belonging to Elizabeth B. Nichols and Mary E. Ball, the creditors of George C. Nichols had, and could have, no claim. And whatever these ladies did could not defraud, and could not be intended to defraud, his creditors. As to his $1,000, there were no suits against him; and he testified that he was then, and had ever since been, perfectly solvent. But if, to the extent of the $1,000, or even to the extent of the whole $7,000, this money be said to have been transferred to Charles F. Nichols with intent to hinder, delay or defraud creditors of George C., still

it is only as to his creditors that the transfer is void. (2 R. S., m. p. 137, § 1.) His creditors are the persons who have the right to claim that the transfer is fraudulent. And this is in order that they may recover back the money to apply on their claims. If the position of the defendant, the Weed Sewing Machine Company, be correct, the money, instead of being restored to the creditors of George C., if there were any, would be kept from them, and applied to pay a creditor of Simeon D. Wood. Wood's creditor has not been defrauded, nor has there been any attempt made to defraud him. Wood has had this money, and it may have gone to pay some of his creditors. For it he agreed to pay Charles F. Nichols. It is of no consequence to Wood whence Charles F. Nichols received the money, even if he stole it. That is: so long as there are no adverse claimants to the money itself; and in this case there are none.

And here it may also be noticed that there has really been no attempt to transfer the ownership of the funds from George C. Nichols and the two others to Charles F. Nichols. No absolute ownership was given to him. He was but an express trustee for them. If there had been three bonds executed (one to each of the interested parties) and a mortgage to Charles F. Nichols as trustee, to secure these three bonds, then the case would have been like that of the ordinary railroad bonds, secured by a mortgage. No one would say that the purchaser of such a railroad bond had transferred his property; because the mortgage, which secured it, was executed to a trustee for all interested. The only difference in the present case from that supposed is that one bond was given to the trustee for the benefit of the parties in interest. But they did not assign or transfer to Charles F. Nichols their property. They only put it in his hands as their respective trustee. They had equitably the same interest as before, and could have enforced their rights against Charles F. And a transfer in trust for the person making it is void only as against his creditors. (2 R. S., m. p. 135, § 1.)

*Second.* As to the claim that the mortgage is void as against public policy. The defendant cites the case of *Cox* v. *Wightman* (11 Sup. Ct., 4 Hun, 799). As that case is not reported in full, it may be well to state what was decided. One Reeve Dilley held a bond and mortgage executed to him. He assigned the bond and

mortgage to Orrin Dilley without consideration, and for the purpose of avoiding taxation thereon ; and testified before the assessors that he did not own this bond and mortgage, but had sold it and had received the pay therefor. Orrin Dilley died in possession of the bond and mortgage. Subsequently Reeve Dilley died. Orrin Dilley's executor foreclosed the bond and mortgage and collected the amount, in the form of another security. There were other facts which it is needless to detail. Reeve Dilley's administrators brought that action to recover that security. It was held that they could not recover. The plaintiff in that case, (like the defendant in this,) urged that the assignment by Reeve to Orrin was utterly void, and that the title to the bond and mortgage remained in Reeve, and cited *Nellis* v. *Clark* (20 Wend., 24) to sustain that doctrine. But the court decided otherwise, and held that Reeve's administrator, (his estate being solvent,) could not get back a bond and mortgage which Reeve had voluntarily transferred, though without consideration, and with a design to escape taxation. That case was affirmed by the Court of Appeals in April 1876 and is therefore a more recent authority than *Dewitt* v. *Brisbane* (16 N. Y., 508). If when Orrin Dilley's executor was foreclosing the mortgage, the mortgagor had set up that the assignment thereof had been made to escape taxation, and if the court had decided that that was a defense to the mortgage, there would have been some analogy to the present case.

But still there is a great difference even between the act of Reeve Dilley in that case and the act of George C. Nichols in the present. Dilley put his property out of his hands, so that he ceased to be, and testified that he had ceased to be, the owner. Nichols, in the most unfavorable view, did not put his property out of his hands, but only invested it in such a manner that it could not easily be found. If a resident of Broome county invests in a bond and mortgage on land in Saratoga county, with the intent, and in order, that the assessors of his town may not readily discover the mortgage, this is no culpable act. It is no act against public policy. If one, in order to escape taxation, sells his bonds and mortgages and invests in railroad stock, or in United States stock, or in railroad bonds, he does nothing wrong. If one with intent to escape taxation buys negotiable paper instead of lending on bond and mortgages, this fact does not affect his title to the paper. And if he should bring

an action on such paper it would be no defense for the defendant to show that the principal motive which induced the plaintiff to lend his money in that way was that he might escape taxation, which he would be liable to, if he purchased land.

Assuming, for the purpose of argument, that George C. Nichols put money into Charles F. Nichols' hands to hold as express trustee for him, in order that the assessors might not discover it, we doubt whether Charles F. could refuse to perform that trust, on the ground of its illegality. But however that may be, if he should choose to perform the trust, no one could complain. And if this trustee invested the money in this bond and mortgage, it is not for the mortgagor to inquire what disposition the mortgagee may make of the money when collected. There was nothing illegal in the loan, even if the arrangement between Charles F. and George C. were against public policy. And the error of the defendant as we think, is in attempting to attach to the contract of loan between Wood and Charles F. an element of illegality, supposed to exist in the arrange ment between Charles F. and George C. Nichols. Wood had no knowledge of any alleged illegality. The contract between Wood and Charles F. Nichols was to repay money which Wood had received, and that is what public policy requires.

There is still another consideration. The doctrine that, where there is an illegal contract, the law will not enforce it in favor of one party thereto against the other has never prevented either party from voluntarily performing the contract he has made. If, for instance, A. has transferred property to B. in order to defraud A.'s creditors and upon a promise by B. to return the property, A. cannot compel B. to keep his promise and return the property, if B. refuses. But, on the other hand, if B. does not refuse, but performs his promise and returns the property, A. can retain it and B. cannot reclaim it. Thus it appears that it rests with the party to the contract to perform or not. If B. should voluntarily return to A. the property thus illegally transferred, no one could complain. B. would be doing a lawful and proper act. He would be returning the property to its rightful owner. And his refusal to return is dishonest, although the law permits him to be dishonest, if he will. B.'s creditors would have no right to the property, because B. would only have performed a contract, which he might perform, if he

chose, but which he could not be compelled to perform if he did not choose. Applying then this reasoning to the case before us and supposing, for the present, that Wood was not obliged to pay the mortgage, for the alleged reason that it was illegal, still he had the right to pay it. He had a right to pay his debt, and he was not bound to resist this foreclosure, on the ground of alleged illegality. It was a real and not a fictitious debt; and its payment would be no fraud on his creditors. The subsequent incumbrancer had no right to insist, for its own benefit, on this defense, which Wood did not choose to set up. The defense was personal to him. If he had paid the debt out of other property, he would have done no wrong to his creditors. To pay it out of the mortgaged property does no wrong to the subsequent incumbrancer.

This may be illustrated by the case of *Wood* v. *Erie Railway Company* (72 N. Y., 196), where it is shown that a common carrier cannot set up as a defense that the shipper of goods is acting in violation of the statute relating to fictitious names.

The defendant cites *Dewitt* v. *Brisbane* (16 N. Y., 508). It is important to understand the facts of that case. Albert Brisbane executed a mortgage to James Brisbane, which, at the time of the assignment thereof by James, was a valid security to a certain amount. James assigned it to Viger, De Witt & Co. as collateral security for an agreement of Albert, illegal under the statute. Albert conveyed to James the equity of redemption. James died; and the defendant was his son and his executor. Therefore it appears that the defendant represented not only the equity of redemption, but also the original mortgagee, who, as pledgor, had still an interest in the mortgage. The plaintiff, by his action, was not only attempting to foreclose the mortgage, but was necessarily attempting to foreclose the interest of James, as the mortgagee, inasmuch as the assignment was not absolute, but only as security.

Thus the question was not purely whether the mortgagor could defend on the ground that the assignment was made for an illegal purpose. The further question was involved whether the assignor of the mortgage, where the assignment was collateral to an illegal purpose, might not resist the foreclosure of his interest therein. The case of *Johnson* v. *Bush* (3 Barb. Ch., 207) decided that the assignor, a corporation, had no power to assign, as it did; that is,

that no assignment in fact was made, not that it was made for an illegal purpose. So the case of *Talmage* v. *Pell* (7 N. Y., 328) turned on the want of power in the corporation. The question of want of power is not in this present case.

We have examined the case of *Drexell* v. *Tyrrell* (15 Nev., 114), cited by defendant. As the case is not authoritative in this State, it is sufficient to say that we have considered the opinion of the majority of the court and the cases cited to sustain it; and we do not think it correct, or sustained by the citations. As we think, the opinion fails to appreciate that there is no illegality in the contract of loan; and that the question is only whether one who has borrowed money shall repay it.

The judgment is affirmed, with costs.

Present — LEARNED, P. J.; BOARDMAN and LANDON, JJ.

Judgment affirmed, with costs.